## KOUNTZE et al. v. KIRBY LUMBER CORPORATION.

No. 11459.

Circuit Court of Appeals, Fifth Circuit.

Feb. 18, 1946.

Everett L. Looney and R. Dean Moorhead, both of Austin, Tex., for appellants.

Joyce Cox and J. M. Slator, III, both of Houston, Tex., for appellee.

Before McCORD, WALLER, and LEE, Circuit Judges.

LEE, Circuit Judge.

The appellants brought this suit for a declaratory judgment[1] to determine the respective rights of the appellants and the appellee under a deed dated July 5, 1902, from the appellants' predecessor in interest (grantor) to appellee's predecessor in interest (grantee), and to quiet appellants' title to such rights and interests as the court may decree. The grantor in the 1902 deed conveyed all its interest in certain described lands in Tyler and San Augustine Counties, Texas, to the grantee with certain reservations and exceptions,[2] to wit: (1) The grantor reserved unto it-

---

[1] 28 U.S.C.A. § 400, Judicial Code, § 274d. Jurisdiction is based upon diversity of citizenship and the matter in controversy exceeds the sum of $3,000.

[2] 1. "Excepting And Reserving, however, from this conveyance, unto the said grantor, its successors and assigns forever, ninety-five per cent (95%) of any and all oil upon, within or under the aforesaid lands hereby conveyed and every part thereof, with the full and complete rights and powers following, to-wit:

2. "To, at any and all times, enter upon said lands and every part thereof, and thereon, therein and thereunder to search for, sink, drive, dig and bore for, mine, work, and get all of the oil found upon, within or under said lands and every part thereof, and to ship, transport, take away and dispose of ninety-five per cent. (95%) of all the oil, so obtained.

3. "To, at any and all times, on said land, manufacture, handle, refine and treat aforesaid ninety-five per cent

self, its successors and assigns, 95% of all oil in place. (2) The grantor reserved unto itself, its successors and assigns, the right to drill for oil and to take away 95% of the oil produced. (3) The grantor reserved unto itself, its successors and assigns, the

(95%) of said oil, and to ship, transport, take away and dispose of any and all products, materials and things so obtained;

4. "To, at any and all times, lay down, construct, maintain, use and operate in, upon and over said lands or any part thereof, pipes, pipe-lines, roads, tramroads and all other appliances and means of transportation necessary and proper for the transportation of said oil and other products obtained by the manufacturing, handling, refining and treating the same and for the transportation of the tools, machinery and supplies of every nature necessary and proper in obtaining said oil from the ground, manufacturing, handling, treating or refining the same, and in storing, caring for and handling said oil or any product obtained therefrom.

5. "In the convenient and proper accomplishment of the purposes and things aforesaid to, at any and all times, erect, set up, use, maintain and operate on said land or any part thereof steam and other engines, machinery, works, tanks, furnaces, buildings, houses and other structures, and at pleasure to remove and carry away the same; to, at any time and all times, use any part of the surface of the land for storing or placing thereon said oil and products derived from manufacturing, handling, refining and treating the same and the rubbish and other materials incident to such operations; to take and use, free of charge, for any of the purposes aforesaid, all water on said lands, loose stone and rock lying on the surface; to take and use for any of the purposes aforesaid, upon paying the fair value thereof, all the timber on said lands or any part thereof under fifteen inches in diameter; to have free ingress, egress and regress at all times in and upon said lands and every part thereof for the purposes aforesaid; to do all such other acts and things not expressly named herein as may be necessary and convenient to obtain the full benefit of the property, rights and powers by this instrument excepted and reserved.

6. "There is also hereby Expressly Reserved to and conferred upon said grantor, its successors and assigns, the full and absolute right and power in good faith to sell and convey the whole of the oil under, within and upon said lands hereby conveyed or any part thereof, and any conveyance or conveyances so made shall pass to the grantee or grantees therein the whole of the oil upon,

within and under the particular land designated and described in said conveyance or conveyances; but in such event said vendor or vendors shall pay or deliver to said John H. Kirby, his heirs, executors, administrators or assigns, then owning the interest in said oil not herein and hereby reserved one-twentieth of the purchase price obtained upon said sale.

7. "In the event of any such sale or sales, the purchaser or purchasers, his or their heirs, executors; administrators and assigns, shall have all and the same rights and powers as to said five per cent. (5%) of said oil as are by this instrument reserved and conferred as to said ninety-five per cent. (95%).

8. "The aforesaid rights and powers hereby reserved and conferred may be exercised not only by the said grantor, its successors and assigns, but by its or their lessees, agents and workmen and any and all other persons by its or their authority or permission; and neither the said grantor nor any of the aforesaid persons deriving their powers mediately or immediately from or through it shall be liable or responsible for any damage or injury whatever which shall or may be caused to said lands or anything thereon by the doing of any of the acts or things the right to do or perform which is hereby reserved and conferred.

9. "It is distinctly understood and agreed that said grantor, its successors and assigns, shall deliver to the said John H. Kirby, his heirs, executors, administrators and assigns, at any well bored or sunk in said lands the one-twentieth part of all crude oil produced and saved from said well. If there is a pipe-line connected with said well, the said one-twentieth shall be delivered in said pipe-line to the credit of the party entitled thereto; if there is no pipe-line connected with said well, then said party entitled to said one-twentieth shall, at his own proper cost and charge, provide the means of saving, receiving and storing his said one-twentieth. This obligation to deliver one-twentieth of said oil shall be one running with the ownership of the well, and when said grantor or any person or persons succeeding to its interest disposes of any interest in any well there shall no longer rest upon it or them any obligation to perform this covenant, but such obligation shall thereupon attach to the person or persons succeeding to such interest."

right to refine 95% of said oil on the lands. (4) The grantor reserved unto itself, its successors and assigns, the right to transport said oil from the premises. (5) The grantor reserved unto itself, its successors and assigns, the right to construct on and remove from the land machinery and structures necessary and proper for the production and storage of said oil. (6) The grantor reserved unto itself, its successors and assigns, "the full and absolute right and power in good faith to sell and convey the whole of the oil"; and any conveyance so made "shall pass to the grantee or grantees therein the whole of the oil," but in such event said vendor shall pay to the grantee, his heirs, executors, administrators, or assigns 1/20 of the "purchase price obtained upon said sale." (7) In the event of any such sale the purchaser "shall have all the same rights and powers as to the said five per cent. (5%) of said oil as are by this instrument reserved and conferred as to said ninety-five per cent. (95%)." (8) The lessees, agents, and workmen of the grantor, as well as its successors and assigns, might exercise the aforesaid rights and powers hereby reserved to said grantor. (9) "It is distinctly understood and agreed that said grantor, its successors and assigns, shall deliver to the said John H. Kirby [grantee], his heirs, executors, administrators and assigns, at any well bored or sunk in said lands the one-twentieth part of all crude oil produced and saved from said well. * * * This obligation to deliver one-twentieth of said oil shall be one running with the ownership of the well, and when said grantor or any person or persons succeeding to its interest disposes of any interest in any well there shall no longer rest upon it or them any obligation to perform this covenant, but such obligation shall thereupon attach to the person or persons succeeding to such interest."

A stipulation [3] between the parties to this suit provided, inter alia: (1) That the

appellants have the power to execute an oil lease covering the full estate in the oil; (2) that the appellee is entitled to 5% of all royalty provided in such lease; (3) that the controversy is limited to the question whether the appellee is entitled, upon the execution of a lease, to 5% of all oil produced in addition to 5% of all royalty provided in such lease.

The court below held: (1) The deed of July 5, 1902, is not ambiguous; (2) paragraph nine of said deed entitles defendant to 5% of all oil produced from said lands by any grantee or lessee of appellants; (3) the term "sale" as used in paragraph six includes "lease," and the purchase price received on sale by lease includes "bonus, delay rentals and royalty"; and (4) in addition to the 5% royalty on all oil produced from said lands, appellee is entitled to 5% of the "purchase price" received by appellants on sale or lease of the "whole of" the oil, and the "purchase price" includes 5% of the bonus, delay rentals, and royalty. The court gave no consideration to any practical construction of the deed between the parties, but stated that if it were obliged to pass upon the question of practical construction it would find in favor of the plaintiff.

In their appeal to this court the appellants urge that the district court erred in holding that the appellee was entitled to receive both 5% of all oil produced and 5% of "the purchase price," including therein any oil royalty received by appellants upon a sale or lease; that upon a sale or lease the appellee was entitled to receive only 5% of the "purchase price," and as part of such price 5% of any oil royalty received.

■ Since the grantor in the 1902 deed conveyed to the grantee all title and interest in the properties save and except 95% of the oil in place and expressly reserved the 95% to the grantor and its successors, under the Texas law the grantor

---

[3] The stipulation has reference to any lease which may be executed in the future and reads in part:

"Defendant admits that plaintiff has power to execute an oil lease covering the full estate in the oil in place. The issue to be litigated in this case is the question of whether defendant is entitled, upon execution of such a lease by plaintiff, to—

"(1) Only 1/20th or 5% of all royalty provided in any such lease, as contended by plaintiffs, or

"(2) A royalty of 1/20th or 5% of all oil produced, as contended by defendant; or

"(3) Both a royalty of 1/20th or 5% of all oil produced, to be paid to it by the lessee, and 1/20th or 5% of all royalties paid by the lessee to plaintiffs.

"The rights held by Texas Land & Cattle Company under the deed to John Henry Kirby, dated July 5, 1902, are now held by plaintiffs."

and grantee became co-tenants with respect to the oil in place.[4] The grantor then owned and appellants, as its assignees, now own an undivided 95% interest in the oil in place; the grantee then owned and appellee, as its assignee, now owns an undivided 5% interest in the same oil.

■ By virtue of paragraph six of the deed the appellants in addition to their interest in this co-tenancy have a power to sell "the whole of the oil" (100%). The same paragraph entitles appellee to receive "one-twentieth of the purchase price obtained upon said sale." In Texas the standard exploration development lease is tantamount to a sale,[5] and the "purchase price" for the execution of a lease includes, in addition to any bonus and delay rentals, the agreed royalty.[6] As heretofore stated, both parties agree that, if the property were leased by appellants, the appellee would be entitled to 5% of any royalty provided in that lease.

In addition to its 5% share of any royalty provision in any lease of "the whole of the oil," the appellee construes paragraph nine to entitle it to 5% of all oil produced. Assuming that in a lease conveying "the whole of the oil" the lessee promises to pay the usual ⅛ royalty, we find that under appellee's contention paragraph nine would entitle the appellee to 1/20 or 8/160 of all oil produced, and paragraph six would entitle appellee to 1/20 of the ⅛, or 1/160, of the reserved royalty. In total the appellee would receive 9/160 of all oil produced. Under such a lease the appellants would receive 11/160 of the oil produced (the ⅛ royalty, or 20/160, minus the 9/160 claimed by appellee). As owner of 5% of the oil in place the appellee would receive 9/160 of the oil produced under the lease, and as owner of 95% of the oil in place the appellee would receive only 11/160 of the oil produced under the lease.

■ The appellee's construction renders two conflicts in the deed: While paragraph six provides that *the purchaser*, under a lease executed by the appellants exercising their power of sale, *is to obtain the "whole of the oil"* upon such conveyance, paragraph nine would give 5% of the "whole of the oil" to the appellee by way of a running covenant. Likewise, paragraph seven's provision that gives the lessee the same rights and powers with respect to the 5% as he obtains with respect to the 95% conflicts with paragraph nine wherein the lessee would pay to the appellee 5% of all the oil produced after purchasing said 5% interest under paragraph six. Such a construction is wholly inconsistent and contrary to the Texas rule, to-wit:

"Even where different parts of the instrument appear to be uncertain, ambiguous, or contradictory, yet, if possible, the court will harmonize the parts and construe the instrument in such a way that all parts may stand, and will never strike down any portion except there is an irreconcilable conflict wherein one part of the instrument destroys in effect another part." [7]

Appellants' construction of the deed harmonizes its different parts and provides royalty to the parties in proportion to their undivided interests in the oil. To illustrate: If the appellants decide to lease 100% of the oil in place under the power given in paragraph six, paragraphs six and seven are operative, but paragraph nine by construction is inoperative. If appellants choose to develop the land themselves—as apparently was within the contemplation of the parties to the deed by virtue of paragraphs two to five, inclusive, thereof— paragraph nine entitles the appellee to a 5% share of any oil which may be produced. Obviously, paragraphs six and seven would have no application. Likewise, if the appellants choose to sell not the whole (100%) of the oil under paragraph six but only their undivided 95% interest in the oil in place, the person who succeeds to such share and stands in their shoes as co-tenant also is bound to pay to the appellee 5% of all production.

The wording of paragraph nine supports the appellants' construction of the deed. That paragraph places the burden of a running covenant on "the grantor, its successors and assigns." "Its successors and assigns" are those who succeed only to the grantor's 95% interest in the oil in place.

[4] Way v. Venus, Tex.Civ.App., 35 S. W.2d 467; 31 Tex.Jur. 555, 556.

[5] 31 Tex.Jur. 574–577, and cases cited therein.

[6] Sheppard v. Stanolind Oil & Gas Co., Tex.Civ.App., 125 S.W.2d 643, 647;

Ehlinger v. Clark, 117 Tex. 547, 8 S. W.2d 666, 670; 31 Tex.Jur. 779, 780.

[7] Associated Oil Co. v. Hart, Tex.Com. App., 277 S.W. 1043, 1044; see also 14 Tex.Jur. 919, 920.

Paragraph nine does not place this obligation upon one who succeeds, by virtue of the power of sale given appellants in paragraph six, to both the 95%. interest of the appellants and the 5% interest of the appellee. One who acquires the 5% undivided interest from appellee or from appellants acting for appellee under the power of sale given by paragraph six becomes as to said 5% interest the successor or assign of. appellee.[8] To hold that a purchaser of the 100% undivided interest by way of the power of sale in paragraph six is obligated to pay 5% of the oil produced to the successor or assign of the 5% interest by way of the running covenant in paragraph nine is to hold that the purchaser of the whole interest is obligated to pay himself, as successor or assign of the 5% interest, 5% of the oil produced.

■ The maxim of construction that in case of doubt the provisions of a deed are construed against the grantor and in favor of the grantee is subject to certain exceptions. The Texas rule is thus stated:

"If it be conceded that there is ambiguity in a deed, and that it is susceptible of two constructions, that one will be adopted that is most favorable to the grantee. * * *

"However, the rule is properly to be regarded as a canon of construction; and it is subordinate to the rule, already noticed, that every part of the deed should be harmonized and given effect where this can be done."[9]

Under appellee's construction of the 1902 deed a purchaser of the 100% interest from appellants under paragraph six would still be obligated under paragraph nine to deliver 1/20 of the oil produced to appellee. This construction ignores the power given appellants in paragraph six to sell and convey appellee's 5% interest along with appellants' 95% interest; it ignores the fact that when appellee's 5% interest is sold (whether appellee made the sale or appellants made the sale for it) ownership of the 5% interest is passed, and thereafter it would have no interest in the oil.

■■ Upon appellants exercising their power to lease "the whole of the oil" (100%) in place under paragraph six of the 1902 deed, the appellee is entitled to receive 5% of the "purchase price." Included in the purchase price are the royal-

ties, bonuses, and delay rentals, provided in any such lease. Appellee is not entitled, as it contends, to a further royalty of 5% of all oil produced. The deed in question is not ambiguous and so we need not consider any practical construction given to such deed by the parties.

The judgment appealed from is reversed, and the cause is remanded for further proceedings not inconsistent with the views herein expressed.

Reversed and remanded.

---

[8] The appellee, for instance, is the successor or assignee of the grantee named in the deed, the original owner of the 5% interest.

