**MABEE OIL & GAS CO. v. HUDSON.**
No. 3266.

Circuit Court of Appeals, Tenth Circuit.
July 17, 1946.

Rehearing Denied Aug. 21, 1946.

In 1933 Hudson owned an undivided one-half interest in the mineral rights under three separate tracts of land in Logan County, Oklahoma. He entered into an oral contract with J. E. Mabee, president of Mabee, in which he agreed to sell such mineral interest to Mabee for a cash consideration and for a future interest in the profits realized by Mabee. Hudson delivered transmittal letters, accompanied by deeds, to Mabee, conveying the mineral interest in the lands. A transmittal letter of July 17, 1933, contained this statement: "Letter follows from Mr. Mabee carrying with it an undivided $\frac{1}{4}$ interest in the profits from this deal over and above cost of $6000.00." On the same day, Mabee paid the $6,000 cash consideration. It did not immediately write the letter referred to in the transmittal letter confirming the retained interest. On July 24 Hudson prepared and delivered to Mabee a proposed form of letter to be executed by the corporation in acknowledgment of Hudson's retained interest. This letter, omitting the caption, was as follows:

"On July 17, 1933, we purchased from you an undivided $\frac{1}{4}$th interest in the minerals under SE$\frac{1}{4}$ 22-17N-4W for a consideration of $6000.00.

"When this deal was made it was understood that we were to carry you for an undivided $\frac{1}{4}$th interest in the net profits on this deal over and above the original purchase price of $6000.00.

"The purpose of this letter is to confirm this fact.

"This letter is in duplicate, and if it bears out our verbal understanding, please execute the carbon copy and return it to us.

"Yours very truly,
"MABEE CONSOLIDATED CORPORATION,
"By ....................
"Accepted: this 24th day of July, 1933,
....................
"(HARGROVE HUDSON)"

Mabee did not execute this letter, but on

Summers Hardy and Logan Stephenson, both of Tulsa, Okl. (F. C. Swindell, Q. M. Dickason, and Milton W. Hardy, all of Tulsa, Okl., on the brief), for appellant.

Walter L. Kimmel and Ray S. Fellows, both of Tulsa, Okl., for appellee.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

This was an action by Hargrove Hudson[1] against the Mabee Oil and Gas Company[2] for an accounting. The facts are these:

---

[1] Herein referred to as Hudson.

[2] The Mabee Oil and Gas Company is a successor to the Mabee Consolidated Corporation, with whom the three transactions were had. Both are the alter ego of J. E. Mabee, and reference will be made to the appellant herein as Mabee.

July 27, 1933, transmitted the following letter to Hudson:

"In re: One-half (80 acres) Royalty
Interest SE¼ Sec. 22-17N-4W
Logan County, Oklahoma

"Dear Sir:

"This is to certify that I am carrying you for an undivided ¼ interest in the profits, if any, to be derived from the sale of or from royalty received under the above captioned lease. I also agree to give you notice before selling this royalty.

"It is further understood that you are not to receive any money from the sale of this royalty or from any royalty earnings until such time as I have been fully reimbursed for the cost of said royalty.

"Yours truly,
"MABEE CONSOLIDATED CORPORATION,
"By J. E. MABEE." [3]

At the time of these transactions, all of the tracts of land were subject to oil and gas leases which expired from two to three years thereafter. A number of wells were being drilled in the vicinity of these tracts and the parties contemplated that these interests could be sold at a profit or could be developed during the term of the leases. These drilling operations resulted in dry holes and as a result the value of this property greatly diminished. Both Hudson and Mabee attempted to sell these mineral interests, but were unable to do so except as to a small tract of ten acres, which was sold at cost to the corporation. At this point the property had but little value, and Mabee carried it on its books at a value of One Dollar.

In 1934, drilling operations were resumed in the vicinity of these properties and resulted in commercial production. After the expiration of the leases, Mabee, in conjunction with the owners of the other undivided one-half interest in these minerals, undertook the development of the properties and brought in substantial production. On December 24, 1943, shortly before the first well was completed on the properties, Hudson wrote the following letter of inquiry to Mabee:

"You will please find attached photostatic copy of the letter dated July 27, 1933, which the Mabee Consolidated Corporation executed to me covering the above tract, showing that I have an undivided one-fourth interest in the profits from a purchase of an undivided one-half interest in the minerals which I sold to Mr. Mabee in 1933.

"The original oil and gas lease, which was in effect when these mineral rights were purchased, has, of course, long since expired.

"I am writing to ask a favor! If agreeable, will you please advise as to the amount this one-half interest in the minerals stands you on your books.

"I shall also appreciate it if you will please advise as to who is drilling the present well on this tract and as to whether you are being billed for your share of the cost of drilling same.

"Mr. Mabee, I surely am glad to see this tract 'in the money'. Whenever I sell anyone something I want them to make money on their investment.

"With kindest personal regards, I remain

"Yours very truly,
"HARGROVE HUDSON."

On January 4, 1944, Mabee replied to this letter as follows:

"This is to acknowledge receipt of your letter of December 24, to which you attach a letter from Mabee Consolidated, signed by J. E. Mabee, and dated July 27, 1933.

"By the contents of this letter, you were to participate in ¼ of the profits, if any, under the above captioned lease.

"As per your request, we wish to advise that the cost of this royalty, according to our books, was $14,010.00. We have received a total of $160.00 as rental, leaving the balance due us, as of this date, $13,850.00.

"We trust that this is the information you desire.

"Yours very truly
"MABEE OIL & GAS COMPANY,
"By F. E. STICKLE."

[3] Separate deeds and transmittal letters and confirmation letters were employed in conveying the mineral interest under the separate tracts. There is no substantial difference in them. They all present a single issue, and in the interest of brevity the facts will be limited to the one transaction narrated above.

The parties are in sharp conflict as to the terms of the oral contract, as well as to the effect of the written instruments executed in fulfillment thereof. Hudson contends that in addition to the cash consideration he was to receive his share of all the profits realized from the mineral interest conveyed to Mabee after it had recovered its actual cost of such interest. Mabee, on the other hand, contends that the contract was that Hudson was to receive, in addition to the cash consideration, his designated interest in the royalties under the existing leases only.

The trial court concluded that the letters of confirmation by Mabee were ambiguous and received extraneous evidence in explanation thereof. Both parties contended throughout the trial that the letters of confirmation were clear and unambiguous, but that is as far as their agreement went. Hudson contended that the letters clearly showed that his interest was in the profits from the mineral rights which he conveyed to Mabee, while Mabee contended with equal vigor that they clearly showed that such interest was only a share in the royalties under the existing leases. The fact that the parties could not agree as to the meaning of the letters which they both say are clear and free from ambiguity is perhaps the only argument that needs be made in support of the court's finding of ambiguity. The court did not err in receiving extraneous testimony in explanation of the writings from which the nature of the transaction must be ascertained.

The correctness of the trial court's judgment depends upon the sense in which the term "royalty" was used by the parties to these transactions. Strictly speaking, the term "royalty," when used in connection with oil and gas rights, means a share of the product reserved to the owner of land from permitting another to produce oil and gas therefrom.[4] But the term is also used in a much broader sense to denote an interest in the mineral rights themselves.[5] It is quite generally used by the oil fraternity in Oklahoma in the sense of being an interest in the minerals themselves. The record is replete with testimony that the Oklahoma oil fraternity ordinarily uses the term "royalty" as denoting an interest in mineral rights, and that the purchasers of the mineral interest under premises subject to a lease ordinarily refer to such purchase as the purchase of a royalty.

The proposed letter of confirmation which Hudson prepared for Mabee's signature clearly indicated that he understood that he was to have an interest in any profits realized from the mineral rights conveyed to Mabee. While Mabee did not execute this proposed letter of confirmation, he made no objection to it because it did not correctly describe Hudson's reserved interest. In the letter of confirmation which it prepared and executed, the word "royalty" appears three times. While this letter starts out by saying that Mabee is carrying Hudson for "an undivided ¼th interest in the profits, if any, to be derived from the sale of or from royalty received under the above captioned lease," the caption does not refer to or describe any lease. The caption of the letter reads: "In re: One-half (80 Acres) Royalty Interest SE¼ Sec. 22-17N-4W Logan County, Oklahoma." This caption lends itself as readily to an interpretation that the word "royalty" was used in its broad sense as connoting a mineral interest as it does to an interpretation that the author was writing about an interest in production under an existing lease. In the concluding paragraph, Mabee states that: "It is further understood that you are not to receive any money from the sale of this royalty or from any royalty earnings until such time as I have been fully reimbursed for the *cost of said royalty*."[6] Here Mabee was writing about the interest which he had purchased. While his interest was a mineral interest, he spoke of it as a royalty. During his cross examination Mabee was asked how he expected to receive a return upon his investment, to which he replied: "When I bought it I ex-

---

[4] See Burns v. Bastien, 174 Okl. 40, 50 P.2d 377; Carroll v. Bowen, 180 Okl. 215, 68 P.2d 773; McCullough v. Almach, 188 Okl. 434, 110 P.2d 295.

[5] See Burns v. Bastien, 174 Okl. 40, 50 P.2d 377; Melton v. Sneed, 188 Okl. 388, 109 P.2d 509.

[6] Emphasis supplied.

pected these operators out there to drill these leases; that is where I expected to get the return *on my royalty;* * * *"[7] Here again he spoke of his interest as a royalty. All of this, as well as other evidence which we do not analyze in detail, amply sustains the trial court's conclusion that Mabee in writing the letters of confirmation used the term "'royalty' in the broad sense in which it is customarily used by those engaged in the oil business in Oklahoma," and that: "It was intended by the parties that Hudson should share in profits made by Mabee from the entire interests delivered to him by Hudson."

The judgment of the trial court is accordingly affirmed.