H. S. WYNN ET AL *v.* SKLAR & PHILLIPS OIL COMPANY ET AL

5-6059                                493 S.W. 2d 439

Opinion delivered April 30, 1973

*Chambers & Chambers,* for appellants.

*McKay, Chandler & Choate; Keith, Clegg & Eckert; E. M. Anderson;* and *J. Bruce Streett,* for appellees.

JOHN A. FOGLEMAN, Justice. This appeal was submitted upon a stipulated record. The case involves the question of proper distribution of royalties under a tract of land. The parties agree that the matter turns entirely upon the interpretation of an instrument entitled "Royalty Deed" executed on April 4, 1921, by T. M. Talley and his wife to J. M. Talley. The questions involved will be better understood by a description of the various instruments relied upon by the parties. In chronological order, they are:

1. Warranty deed dated November 4, 1919, executed by T. M. Talley, Jr., and wife, conveying the 87½-acre tract which is the subject of this litigation to J. H. Merrett, which contains the following clause:

The said Grantors of this Deed of Conveyance T. M. Talley, Jr. and M. S. Talley his wife, do hereby Reserve all the oil and minerals rights on the above described Lands, and hold the right to operate on the said land for same.

2. Lease dated November 22, 1919, by which T. M. Talley and wife leased the lands to J. M. Talley for

the sole purpose of mining and operating for oil and gas, for a term of five years and as long thereafter as oil or gas or either of them is produced by the lessee, his successors or assigns. This lease required delivery to the lessors of 1/8 of all oil produced from the leased premises; payment of $200 per year for gas from each well where gas only was found, while gas was used off the premises, and the furnishing of gas to the lessees free of cost for all stoves and lights in dwelling houses on the premises during the same period; and the payment of $25 per year for gas produced from any oil well and used off the premises. The following are the provisions other than that set out above pertaining to the life of the lease:

The parties of the second part further agree that in case operations for either the drilling of a well for oil or gas is not commenced and prosecuted with due diligence within one year from this date then this grant shall immediately become null and void as to both parties; provided, that second parties may prevent such forfeiture from quarter to quarter for three years by paying to the first party the sum of 25 cents per acre per year until such well is commenced. And it is agreed that the completion of such well shall be and operate as a full liquidation of all rent under this provision during the remainder of the term of this lease. * * *

All money that may become due under this grant payable Farmers Bank & Trust Co. or payable direct to T. M. Talley. It is further agreed that upon failure of second parties, their heirs or assigns, to pay said sum of 50 cents per acre within thirty days after the expiration of any rental date, this lease shall be and become null and void.

(It was stipulated that no production was ever had under this lease. The record is silent as to the drilling of wells or payment of delay rentals.)

3. The deed entitled "Royalty Deed" dated April 4, 1921, by T. M. Talley and wife conveying unto J. M. Talley and unto his heirs and assigns forever "a one eight (being all the Royalty retained by us) undivided interest of, in and to all the oil, gas and minerals on, in and under the *** lands *** granting to the said J. M. Talley, his heirs and assigns, the right of ingress to and upon said lands for the purposes of securing, storing and removing oil and gas, and the right of occupancy of said lands for and only for the purposes of storing, securing and removing oil and gas." The warranty clause read:

> And we hereby covenant with said J. M. Talley that we will forever warrant and defend the title to the said interest in the oil, gas and mineral on, in and under said lands against all lawful claims whatever.

4. A deed from J. M. Talley entitled "Royalty Deed" dated April 5, 1921, conveying to J. H. Merritt "a one-sixteenth (being one-half of all the royalty retained in said land by T. M. Talley and sold to J. M. Talley by the said T. M. Talley, 4-4-1921) undivided interest of, in, and to all the oil, gas and minerals on, and under the *** lands ***."

5. An oil and gas lease dated January 28, 1927, by which T. M. Talley, Jr., leased the lands to J. M. Talley for the sole purpose of mining and operating for oil and gas for a term of five years or as long thereafter as oil or gas is produced from the land. The lessee agreed to deliver to the credit of the lessor, free of cost, 1/8 of all oil produced and saved, to pay $200 per year for each well producing gas only, until such time as the gas should be utilized or sold off the premises, when the grantor would be paid 1/8 of the value of the gas and to furnish lessor with gas free of cost for all stoves and inside lights in the main dwelling house on the land, and to pay the lessor 1/8 of the proceeds of sale of gas produced from an oil well and used off the premises or for the manufacture of casing-head gas. This lease contained

provisions for termination and delay rentals which were similar to those in the first lease.

6. Mineral deed dated May 3, 1947, by which T. M. Talley conveyed to Mattie Moore an undivided 7/8 interest in and to all of the oil, gas distillate and other minerals in and under and that may be produced from the lands.

7. Mineral deed dated August 4, 1948, by which Mattie Moore conveyed to T. M. Talley an undivided 7/16 interest in and to all of the oil, gas, distillate and other minerals in and under and that may be produced from the lands. This deed contained the following parenthetical statement:

(It is the intention of the grantor herein to convey to the grantee herein 38.28125 full mineral acres.)[1]

8. Mineral Deed dated August 16, 1948, by which Mattie Moore conveyed to Pauline Dominy an undivided 7/16 interest in all of the oil, gas, distillate and other minerals in and under and that may be produced from the lands. This deed also recites the intent to convey 38.28125 mineral acres.[1]

9. Mineral Deed dated March 26, 1955, by which Pauline Dominy conveyed to J. M. Talley an undivided 7/16 interest in all of the oil, gas, distillate and other minerals in and under and that may be produced from the lands.

If we consider the various meanings which have been accorded the word "royalty," and treated the parenthetical clause as controlling, the deed might be taken

---

[1]Use of the term "mineral acres" to describe an interest reserved or conveyed has been one factor influencing some courts to construe the interest as a mineral interest. *Picard* v. *Richards*, 366 P. 2d 119 (Wyo. 1961).

to have conveyed any of the following: (1) the "royalty" payable under the lease described in item 2, which was then only slightly more than two years old; (2) fee title to 1/8 of the minerals in place, with all attendant incidents, with the parties considering the 1/8 interest and "royalty" as synonymous and inserting the parenthetical clause in an effort to clarify the interest conveyed; (3) a perpetual royalty either "participating" or "nonparticipating," which constitutes a beneficial interest in future oil and gas production; (4) a beneficial interest in future production together with an interest in oil and gas in place; and (5) an interest that enabled the grantee to grant an oil and gas lease and collect the entire royalty paid thereunder. See *Longino* v. *Machen,* 217 Ark. 641, 232 S.W.2d 826; *Keaton* v. *Murphy,* 198 Ark. 799, 131 S.W. 2d 625; *Arrington* v. *United Royalty Co.,* 188 Ark. 270, 65 S. W. 2d 36, 90 A.L.R. 765; *Green* v. *Biddle,* 21 U.S. 1, 8 Wheat. 1, 5 L. Ed. 547 (1823); *Allen* v. *Thompson,* 169 Ark. 169, 273 S.W. 396; 4 Summers Oil & Gas (Perm. Ed.) 8, § 572; *Hanson* v. *Ware,* 224 Ark. 430, 274 S.W.2d 359, 46 A.L.R.2d 1262: Annot. 4 A.L.R.2d 496 (1949).

The chancellor held that the deed conveyed a one-eighth interest in oil, gas and minerals under the lands. Appellants contend that the deed described in item 3 above conveyed "all of the royalty under the lands." Appellants, in oral argument, described the interest they contend was conveyed as 1/8 of the production of the oil, gas and minerals from the lands. They rely on a definition of the word "royalty" in *McDonald* v. *Sanders,* 207 S.W. 2d 155 (Tex. Civ. App. 1947), as 1/8 interest in oil and gas produced and contend that the parenthetical clause describes the grant as being all of the "royalty" reserved in the deed to Merritt, which would leave Talley only a 7/8 working interest.

There would be no ambiguity in the deed except for the parenthetical clause relied upon by appellants. If this clause were omitted, the deed would simply constitute a conveyance of 1/8 of the oil, gas and minerals. See *Smiley* v. *Thomas,* 220 Ark. 116, 246 S.W.2d 419. This insertion, however, makes the granting clause ambiguous.

See *Melton* v. *Sneed*, 188 Okla. 388, 109 P. 2d 509 (1940); *Mabee Oil and Gas Company* v. *Hudson*, 156 F.2d 450 (10th Cir. 1946). The construction of the deed depends to a great extent upon the sense in which the parties used the word "royalty." The word cannot be so precisely defined as to enable us to say that what would otherwise be a deed for one-eighth of all oil, gas and minerals became a conveyance of one-eighth of the oil and gas produced, as appellants contend.

It has been said that a conveyance of a royalty interest and a conveyance of minerals in place appear so much alike to the average person inexperienced in such matters, one may easily be substituted for the other. *Neel* v. *Rudman*, 160 Fla. 36, 33 So. 2d 234 (1948). See also, *Simson* v. *Langholf*, 133 Colo. 208, 293 P.2d 302 (1956). In *Longino* v. *Machen*, 217 Ark. 641, 232 S.W.2d 826, we found it necessary to ascribe a meaning to the word in construing a deed. There we said:

> We are aware that this term is sometimes loosely used to mean an interest in minerals in place, but it is well settled that the ordinary and legal meaning of the term is a share of the product or profit, to be paid to the grantor or lessor by those who are allowed to develop the property. It has often been pointed out that the ordinary meaning of royalty does not include a perpetual interest in oil or gas in the ground. Leydig v. Commissioner of Internal Revenue, 10 Cir., 43 F.2d 494; Bellport v. Harrison, 123 Kan. 310, 255 P. 52; Rist v. Toole County, 117 Mont. 426, 159 P.2d 340, 162 A.L.R. 406. On two occasions we have interpreted language not wholly dissimilar to that now before us as meaning royalty payments to the lessor rather than an interest in the minerals themselves. Keaton v. Murphy, 198 Ark. 799, 131 S.W.2d 625; McWilliams v. Standard Oil Co., 205 Ark. 625, 170 S.W.2d 367.

This court has, on occasion, used the word as if it were an interest in oil, gas and minerals in the land without reference to any existing or contemplated lease. See *Allen* v. *Thompson*, 169 Ark. 169, 273 S.W. 396.

The word has been accorded various meanings, in addition to those mentioned in *Longino*. One of these is discussed at 3A Summers, Oil and Gas, Perm. Ed. 8, § 472, where the author said:

> In some jurisdictions a grant or reservation of a royalty prior to lease has the effect of creating separate mineral fee estate in the oil and gas or in the right to produce them, but if such interest is restricted to the right to receive a portion of the oil or gas produced with no right in the owner thereof to join in future leases, or to receive a portion of the bonus or delay rentals, the interest is a perpetual non-participating royalty. This type of royalty may also be created during the existence of an oil and gas lease by a grant of a share of the royalties under the existing lease, together with a share of the royalties under future leases, but reserving to the grantor the sole power to execute future leases. The term "non-participating" is used to indicate that it is not necessary for the owner of the royalty to join in a lease of the land for oil and gas and that he is not entitled to share in the cash bonus or delay rental paid by a future lessee. The term "perpetual" as applied to this type of royalty is something of a misnomer, for such royalties may be created for years, for a definite term of years and as long thereafter as oil or gas is produced from the land, for life or in perpetuity.

* * *

> When royalties are sold apart from the interest in the land, an effort is usually made in all localities to transfer to the grantee more than all or a portion of the royalties under the existing lease. This is often done by granting proportionate interests in the lessor's reversionary interest in the minerals in place and the royalties under the existing lease. It may be done, however, by language of the deed indicating an intention to convey a perpetual royalty interest without an express conveyance of a proportionate interest in the minerals in place, or by an express grant of royalties under existing and future leases.

Our holding in *Arrington v. United Royalty Company*, 188 Ark. 270, 65 S.W. 2d 36, 90 A.L.R. 765, that royalties in gas and oil, until brought to the surface and reduced to possession, are interests in real estate and not personal property was premised primarily upon the holding in *Green v. Biddle*, 21 U.S. 1, 8 Wheat. 1, 5 L. Ed. 547 (1823), that the grant of a fraction of the royalties, rents and income from oil is a grant of that fraction of the oil in place.

We clearly recognize that a perpetual nonparticipating royalty may be created by deed. *Hanson v. Ware*, 224 Ark. 430, 274 S.W.2d 359, 46 A.L.R.2d 1262. We found there that such a royalty was created simply by construing the entire deed so that each clause was accorded a meaning consistent with every other clause in the deed. By doing so, we could say with certainty that the parties to the instrument had no intention to convey any title to the minerals themselves—a result that can hardly be justified here, because the quoted clause describing the grant appears to be self-contradictory if the ordinary, strict legal meanings of the respective words are utilized.

The difficulties presented in determining whether a mineral fee or royalty interest is conveyed by an instrument arise from justifiably different understandings of the meaning of the word "royalty" and from lack of precise terminology to describe the interest intended, and the courts can only arrive at the correct meaning in any particular instrument by considering it from its four corners and by resort to other aids commonly employed to construe ambiguous contracts and arrive at the intention of the parties. *Wilson v. Stearn*, 202 Ark. 1197, 149 S.W.2d 571; *Clampitt v. Ponder*, 91 F. Supp. 535 (W.D. Ark. 1950). See also, 3A Summers, Oil and Gas 296, 310, §§ 599, 601; *Schnitt v. McKellar*, 244 Ark. 377, 427 S.W. 2d 202; Annot. 4 A.L.R.2d 492 (1949); *Picard v. Richards*, 366 P. 2d 119 (Wyo. 1961); *Purcell v. Thaxton*, 202 Okla. 612, 216 P.2d 574 (1950); *Lathrop v. Eyestone*, 170 Kan. 419, 227 P.2d 136 (1951).

As pointed out in *Longino*, we held in *Keaton v. Murphy*, 198 Ark. 799, 131 S.W.2d 625, that a conveyance of "an undivided one-half interest of the one-eighth roy-

alty held by the [grantor] in and to all the oil and gas in, under and upon the [described] lands ***" was not a conveyance of minerals in place but only of the royalty payable under a lease to which the conveyance was subject. But other provisions in that deed were harmonious with that construction. Because of the ambiguity in the deed before us, it was the duty of the trial court and now of this court to ascertain the intention of the parties to the deed and to try to make all parts of the instrument harmonize. *Davis* v. *Collins*, 219 Ark. 948, 245 S.W.2d 571. We must give all parts of a deed such a construction, if possible, that they may stand together. *Citizens Inv. Co.* v. *Armer*, 179 Ark. 376, 16 S.W.2d 15.

In seeking to harmonize different clauses of a contract, we should not give effect to one to the exclusion of another even though they seem conflicting or contradictory, or adopt a construction which neutralizes a provision, if the various clauses can be reconciled. We must ascertain the intention of the parties, not from particular words and phrases, but from the whole context of the agreement or deed. *Continental Casualty Company* v. *Davidson*, 250 Ark. 35, 463 S.W.2d 652; *Schnitt* v. *McKellar*, supra. In arriving at the intention of the parties, the courts may consider and accord considerable weight to the construction of an ambiguous contract or deed by the parties themselves, evidenced by subsequent statements, acts and conduct. *Organized Security Life Ins. Co.* v. *Munyon*, 247 Ark. 449, 446 S.W.2d 233; *Arlington Hotel Co.* v. *Rector*, 124 Ark. 90, 186 S.W. 622; *Schnitt* v. *McKellar*, supra. Courts may also acquaint themselves with and consider circumstances existing at the time of the execution of a contract and the situation of the parties who made it. *Brown* v. *Windland*, 249 Ark. 6, 457 S.W.2d 840; *Schnitt* v. *McKellar*, supra.

A very convincing argument could be advanced in support of the first alternative construction set out above. There is nothing to indicate that a well was not drilled on the land or that delay rentals were not paid. Yet, there are factors that militate against such a holding. The royalty or rental for gas wells in the lease was a stipulated sum rather than a fractional interest. Appellant

also points out that the "royalty deed" conveys the interest to J. M. Talley and unto his heirs and assigns *forever,*[2] the habendum clause contains similar language and the grantors covenanted that they would *"forever warrant and defend the title to the said interest in the oil, gas and mineral on, in and under said lands."* (Emphasis ours.) And then the interest conveyed by a transfer only of the right to receive royalties under an existing unproductive lease would be of a very uncertain and speculative nature, and its purchase economically unreasonable, because it would terminate with the lease. That it is unwise to purchase such a limited royalty interest is said to be well understood in the industry. 3A Summers, Oil and Gas, Perm. Ed. 8, 25, 311, §§ 572, 576, 601. Furthermore, no reference is made in the deed to the prior lease, although it seems logical that some mention of this lease would have been made if it were still in force and the grantor only intended to convey the royalty he would receive thereunder. See *Melton* v. *Sneed,* 188 Okla. 388, 109 P. 2d 509 (1940);[3] *Clampitt* v. *Ponder,* 91 F. Supp. 535 (W.D.Ark. 1950). Professor Summers (Oil and Gas, Vol. 3A, p. 311, § 601) has treated the probability of such a conveyance thus:

> It seems safe to assert that in most royalty and mineral conveyances executed by oil and gas lessors the intent is to grant or reserve some fraction or percentage of the rents and royalties payable under the existing lease together with such other interest as will make the interest granted or reserved perpetual. Such other interest may be a nonparticipating royalty interest after the termination of the existing lease or a fraction or percentage of the lessor's reversionary mineral interest, so that upon termination of the

---

[2]The use of the word "forever" in the granting and habendum clauses has been held to relate to the person to whom property is given and not to the estate, so it cannot operate to either add to or take from the estate granted by the words preceding it. *Watson* v. *Wolff-Goldman Realty Co.,* 95 Ark. 18, 128 S.W. 581, Ann. Cas. 1912A 540.

[3]In Oklahoma the determination of the question whether the word "royalty" is used in its broad sense or in its restricted meaning may depend upon the existence of an oil and gas lease. *Elliott* v. *Berry,* supra; *Purcell* v. *Thaxton,* 202 Okla. 612, 216 P.2d 574 (1950). See also, *Corlett* v. *Cox,* 138 Colo. 325, 333 P.2d 619 (1958).

existing lease the grantor and grantee are tenants in common of the oil and gas in place.

But this construction would totally negate the clear meaning of the granting clause without the parenthetical expression. If the first alternative should be correct, however, neither party can complain. The court's holding is more favorable to appellants than this possible construction, and appellees did not appeal from the decree.

Even though the use of the word "royalty" to describe an interest in minerals in place is a loose one, it is well recognized that such a definition is properly ascribed to the word under appropriate circumstances. *Longino* v. *Machen,* supra; *Mabee Oil Co.* v. *Hudson,* 156 F.2d 450 (10th Cir. 1946); *Melton* v. *Sneed,* supra; *Elliott* v. *Berry,* 206 Okla. 594, 245 P.2d 726 (1952).[4] Professor Summers (Oil and Gas, Perm. Ed., Vol. 3A, p. 383, § 606) states that, because of confusion among royalty grantors between royalty and fee interests, the mineral fee in the first grant is often described as one-half of the royalty, rather than one-half of the mineral fee.

In *Marias River Syndicate* v. *Big West Oil Co.,* 98 Mont. 254, 38 P.2d 599 (1934), it was held that a provision "reserving unto the said parties of the first part a 12½ percent interest and royalty in and to all oil and gas and other minerals of whatsoever nature, found in or located upon or under said land or premises above described or that may be produced thereon" constituted a severance of the 12½ percent interest from the oil and gas and other mineral in and under the land from the residue of the oil, gas and mineral and surface rights conveyed, so that the owners became tenants in common as to the oil and gas. The reservation of "an undivided one third (1/3) interest in and to all of the royalty of the gas, oil and mineral and the rights thereto, in or under the premises hereinafter described" was held to constitute a retention of a one-third interest in the oil, gas and mineral rights, by disregarding

[4]It should be noted that in Oklahoma and California the doctrine of fee simple ownership of minerals in place is not recognized, but in both states a reservation or grant in perpetuity of royalty rights constitutes an interest in realty with incidents and attributes similar to fee simple ownerships. *Simson* v. *Langholf,* 133 Colo. 208, 293 P.2d 302 (1956).

the strict definition of the word "royalty" in order to harmonize, and give meaning to, all the terms of the instrument and to make the deed operate according to the intention of the parties in *Wilson* v. *Olsen*, 167 Okla. 527, 30 P.2d 710 (1934).

The use of the words "in and under" the lands, or words of similar import has been held (even in Texas) to be consistent with a grant or reservation of an interest in the minerals in place under the ground and not with an interest in oil, gas and other minerals produced. *Miller* v. *Speed*, 259 S.W.2d 235 (Tex. Civ. App. 1952).

Appellants' argument that the title of the deed requires us to construe the grant as they do is not persuasive. In *Mabee Oil & Gas Co.* v. *Hudson*, 156 F.2d 450 (10th Cir. 1946), the Circuit Court of Appeals for the Tenth Circuit sustained a holding that the word "royalty" should be construed to denote an interest in mineral rights themselves. While the caption of the instrument there being construed used the words "Royalty Interest," the court said that the caption lent itself as readily to an interpretation that "royalty" was used in its broad sense as connoting a mineral interest as it does to an interpretation that the author referred to an interest in production under an existing lease, and held that it was properly construed to convey an interest in mineral rights when read in conjunction with the remainder of the instrument and other documents constituting written evidence of the transaction between the parties. It has also been held in other jurisdictions that the interest conveyed is to be determined by the language of the instrument of conveyance, rather than the title denominating it as a royalty deed. See *Serena* v. *Rubin*, 146 Kan. 603, 72 P.2d 995 (1937). An instrument entitled "Sale of Oil and Gas Royalty" and referred to by all the parties as a royalty conveyance was held to be a mineral deed because it "granted, sold, conveyed and delivered * * * an undivided one-half interest in and to all of the oil, gas and other minerals" in and under the land described for a period of 15 years and as long thereafter as oil or gas is produced from the premises. *Sledd* v. *Munsell*, 149 Kan. 110, 86 P. 2d 567 (1939).

Appellants urge that the inclusion of the "ingress and egress" clause in the deed in question is indicative that "royalty" was conveyed, citing *Hays* v. *Phoenix Mutual Life Insurance Company*, 391 P.2d 214 (Okla. 1964). There, however, the court's holding was based as much upon the fact that an oil and gas lease covering the land was in force at the time of the execution of the deed before it as upon the specific clause. Furthermore, in *Hays*, the right of ingress and egress was less extensive than that involved here in that there was no authorization to go upon the premises for the purposes of prospecting for, severing and removing minerals as there is here. Under the authority of that case, in which the court quoted from 1 Williams and Meyers "Oil and Gas Law" § 202.3, the clause here is more consistent with a mineral interest than a royalty in the technical sense or in the sense urged by appellants. See also, *Neel* v. *Rudman*, 160 Fla. 36, 33 So. 2d 234 (1948). The court in *Hays* called attention to *Doss Oil Royalty Company* v. *Lahman*, 302 P.2d 157 (Okla. 1956), where it had held that "royalty" was construed in that state in its broad sense of denoting mineral rights where there is no oil and gas lease upon the property but in the sense of denoting an interest in production when the property is under lease. See also, *Elliott* v. *Berry*, 206 Okla. 594, 245 P.2d 726 (1952). The chancellor stated here that there was no evidence that the 1919 lease was in force at the time of the execution of the deed we are considering.

Even in Texas, there has not been a slavish and unswerving adherence to the definition extracted from *McDonald* v. *Sanders*, supra, by appellants. There, the word "royalty" used in a mineral deed is taken to mean one-eighth of the oil produced from the premises, only when it is not qualified by any language in enlargement of the term. *Delta Drilling* v. *Simmons*, 325 S.W.2d 222 (Tex. Civ. App. 1959). It is clearly recognized by the Supreme Court of Texas that the word may be given a broader meaning than that ordinarily and commonly used in the oil and gas industry in Texas. *Griffith* v. *Taylor*, 156 Tex. 1, 291 S.W.2d 673 (1956). It seems that the Texas courts go no further than to hold that the courts will take judicial notice that the *usual* royalty in an *oil and*

*gas lease* is one-eighth of the oil and gas produced. *Badger* v. *King*, 331 S.W.2d 955 (Tex. Civ. App. 1959); *State Nat. Bank of Corpus Christi* v. *Morgan*, 135 Tex. 509, 143 S.W.2d 757 (Tex. Comm. App. 1940); *Patterson* v. *Texas Co.*, 131 F.2d 998 (5th Cir. 1943).

In *Acklin* v. *Fuqua*, 193 S.W.2d 297 (Tex. Civ. App. 1946), the Texas Court of Civil Appeals, Amarillo District, held that a conveyance of "one-eighth of all the natural gas, oil, petroleum and substances being all the royalty in on or under the following described * * * tract of land * * *" transferred a mineral fee interest and not a royalty interest, saying that if the phrase "being all the royalty" is not in harmony with the remaining provisions of the instrument, it should not be accorded weight or dignity when it appears that the other terms have controlling effect. That court pointed out that the use of language granting the right to production by the words "together with the right to enter thereon, open mines, drill wells, lay pipe lines," was in harmony with an intention to grant a mineral fee. The Texas court adhered to the same rules of construction to which we resort in Arkansas, i.e., that the intention of the parties must be gathered primarily from a fair consideration of the whole instrument and the construction given should harmonize with the terms of the deed, its scope, subject matter and purpose. That court also applied another familiar rule of construction in Arkansas, saying:

> "The rule is that, where there is a repugnance between a general and a particular description in a deed, the latter will control." In the instant case there is, at least, an apparent inconsistency, if not a repugnance, between the first part of the description, "one-eighth of all the natural gas, oil, petroleum and substances," which is a particular description, and the phrase following, "being all the royalty," which is a general description. Applying the said rule to the given description in the instant case the particular description of "one-eighth of all the natural gas, oil, petroleum and substances" should control and since the phrase, "being all the royalty" is general and does not seem to aid any in the description, such a phrase may be disregarded and held of no

significance as was done in a similar case styled Jones v. Bedford, Tex.Civ.App., 56 S.W.2d 305, writ refused. Then such is also in harmony with still another rule approved by the Supreme Court in the case of Bruni v. Vidaurri, 140 Tex. 138, 166 S.W.2d 81, 94, stating that "A subsequent erroneous addition should not be permitted to limit or impair what has been definitely and certainly described."

While Texas courts follow the rule in such matters that an ambiguous deed will be construed most favorably to the grantee, they subordinate it to the rule that every part of the deed must be harmonized and given effect, if possible. *Kountz* v. *Kirby Lumber Co.,* 153 F.2d 695 (5th Cir. 1946), cert. denied, 329 U.S. 713, 67 S. Ct. 44, 91 L. Ed. 619 (1946). Although appellants argue that we should sustain their contention by construing the deed in this case most strongly against the grantor, it seems to be universally held that this rule of construction is one of last resort, to be applied only when all other rules for constructing an ambiguous deed fail to lead to a satisfactory clarification of the instrument, and that it is particularly subservient to the paramount rule that the intention of the parties must be given effect, insofar as it may be ascertained, and to the rule that every part of the deed should be harmonized and reconciled so that all may stand together and none be rejected. 23 Am. Jur. 2d 211, Deeds, § 163; 26 C.J.S. 813, Deeds, § 82. See *Dierks Lumber and Coal Co.* v. *Meyer,* 85 F. Supp. 157 (W.D. Ark. 1949).

In *Doe* v. *Porter,* 3 Ark. 18, we held that when two land descriptions, one particular and the other general, in a deed are contradictory, the particular shall prevail over the general. We also recognized that the construction should be upon the entire deed and every part of it, so that the whole deed may stand together, if practicable, and every sentence and word made operative. We have consistently applied the rules stated in *Doe* and particularly relied upon them in holding that a particular land description restrains and limits a general description in *Goforth* v. *Wilson,* 208 Ark. 35, 184 S.W.2d 814.

Even though the words "one-eighth undivided interest

of, in and to all the oil, gas and minerals on, in and under the following lands" might possibly be taken to be a broader and more comprehensive term than the word "royalty" when technical definitions are the measure, there is no room for doubting that "royalty" has a more varied and less specific meaning, when all of the common usages of the terms are compared. And then, when a qualifying or explanatory parenthetical phrase inserted in an otherwise complete granting clause conflicted with and was repugnant to clear and distinct operative words of the grant, as is the case here, it was held that the operative words prevail over the parenthetical clause. *Knox* v. *Krueger,* 145 N.W. 2d 904 (N.D. 1966). By similar reasoning, in construing a granting clause conveying "an undivided 1/8 of 1/8 royalty interest in and to all of the oil, gas and other minerals in and under and that may be produced from the following described land," it was held that the word "royalty" should be omitted, because, by doing so, the instrument became clear and unambiguous and showed a conveyance of 1/64 of the oil, gas and other minerals in and under the land subject to the terms and provisions of a lease. *Jones* v. *Bedford,* 56 S.W.2d 305 (Tex. Civ. App. 1932).

The only way that all of the words in the deed of April 4, 1921, can be given a harmonious effect is by according the word "royalty" a non-technical meaning consistent with the remainder of the granting clause. We hold that the deed conveyed to J. M. Talley an undivided 1/8 interest in the minerals under the lands therein described. This result is the only one that is consistent with all pertinent rules of construction of ambiguous deeds.

When we consider subsequent actions of the parties, we find that in the 1927 lease from T. M. Talley, Jr., to J. M. Talley, there is no warranty of title by the lessor and the lease contains a "lessor estate" clause by which the royalties and rentals paid the lessor were to be in the proportion which the lessor's interest bore to the whole and undivided fee, if the lessor owned less than the entire and undivided fee simple estate. This would seem to indicate recognition that there was an outstanding

interest in the land or minerals but that T. M. Talley had retained the right to execute oil and gas leases and to receive royalties on account thereof. Such actions by grantors have assisted other courts in construing "royalty" in a conveyance to mean an interest in mineral rights. See *Melton* v. *Sneed*, 188 Okla. 388, 109 P. 2d 509 (1940). Much later, T. M. Talley conveyed an undivided 7/8 interest in and to all of the oil, gas and minerals in and under and that may be produced from the lands. The chancellor observed that this led him to believe that T. M. Talley thought he owned 7/8 of the minerals. We think there is some justification for this belief and that the subsequent conduct of T. M. Talley is consistent with our construction of the deed in question.

The decree is affirmed.

JONES and BYRD, JJ., dissenting.