William M. BARRET et al *v.*
D. B. KUHN et al

78-61                                    572 S.W. 2d 135

Opinion delivered October 9, 1978
(Division II)
[Rehearing denied November 13, 1978.]

348

*Keith, Clegg & Eckert;* and *G. William Lavender* and *Johnny Arnold,* for appellants.

*Smith, Stroud, McClerkin, Conway & Dunn,* by: *Hayes C. McClerkin,* for appellees.

DARRELL HICKMAN, Justice. The central legal question presented by this appeal from a Miller County Chancery Court decree is: do the owners of non-participating royalty interests, under their deeds, participate in all royalty in certain oil and gas leases or only in the normal one-eighth royalty reserved to the owners of the mineral interests? The chancellor held that their participation was only in a one-eighth royalty and we agree with that decision.

The appellees are the owners of the mineral interests and they filed this lawsuit for a declaratory judgment of the rights of all parties to money to be paid from producing wells on their property.

Some of the appellants are holders of non-participating royalty interests in the oil and gas production; the others are the producers, or holders of the working interest in the oil and gas production.

Perhaps a few definitions would be in order to aid those unfamiliar with the terminology used in oil and gas law.

A "royalty" is the landowner's share of production, free of expenses of production and normally amounts to a one-eighth of eight-eighths interest. An "overriding royalty" is an interest in oil and gas produced at the surface free of the expense of production and in addition to the usual landowner's royalty reserved to the lessor in an oil and gas lease. A "non-participating royalty" is an expense-free interest in oil and gas, as, if and when produced. The prefix "non-participating" indicates the interest does not share in bonus or rental, nor in the right to execute leases, or to explore and develop. The "working interest" is the operating interest under an oil and gas lease. *Oil and Gas Terms,* Williams and Meyers (4th ed. 1976).

In the 1940's, before production on these lands, appellees, or their predecessors, signed essentially identical

non-participating royalty deeds to some of the appellants. These deeds simply gave, for valuable consideration, a fixed interest in or claim to any money paid from production of oil and gas from the lands. At the time there was no production. It is not disputed that the non-participating claimants had no right to lease the land, and until production was gained, they would have no interest or claim.

In 1975, the appellees negotiated with a man named L. G. Cameron and signed oil and gas leases on the property, granting to Paramount Drilling Company, Inc. and William M. Barret the working interests.

These leases all provided for the appellees to have an overriding royalty if production was obtained. In some instances the overriding royalty amounted to a one-eighth interest and in others a one-sixteenth interest but the documents were all essentially the same. This overriding royalty was to be in addition to the usual one-eighth royalty that was reserved in these leases and which is normally reserved by an owner. There was no mention in the negotiations for the leases, nor in the leases themselves, of the non-participating royalty. holders.

When production was obtained, a division order was prepared setting forth in detail who was to be paid a royalty and in what amount. The division order was the first notice to the parties that the non-participating royalty holders would get or had a claim to the overriding royalty payments to be paid to the appellees. The order was apparently based in part on a Texas decision, *Griffith* v. *Taylor*, 156 Tex. 1, 291 S.W. 2d 673 (1956).

The royalty deeds in question are form instruments, headed in bold type "ROYALTY DEED", beneath which is the word, "non-participating". (There was never any serious contention that these "deeds" gave the grantees or lessees a fee interest in the oil, gas and minerals. Similar "deeds" have raised such issues when there were other circumstances involved. *Wynn* v. *Sklar & Phillips Oil Co.*, 254 Ark. 332, 493 S.W. 2d 439 [1973].)

The granting clause in these royalty deeds reads:

That _____ for and in consideration of . . . $ _____, . . . do hereby grant, bargain, sell, and convey unto the said _____ and unto its successors and assigns forever, subject, however, to all of the terms, conditions and reservations hereinafter mentioned, an undivided one sixty-fourth (1/64) interest in and to all of the oil, gas and other minerals, in, under and upon the following described lands . . . .

After describing the property, the deeds contained two other relevant clauses; one which we will refer to as the royalty clause and the other the production clause. The royalty clause reads:

PROVIDED, that the grantors herein expressly covenant with the grantee that no oil and gas mining lease shall ever be executed covering the above land, or any part thereof, that shall reserve to the grantors herein, their heirs and assigns, as royalty, less than one-eighth of all of the oil and gas produced and saved from said land — and this covenant shall be deemed a covenant running with the land.

It is the intention of the parties hereto that the grantee herein, its successors or assigns, shall be entitled to receive hereunder one-eighth of all oil and/or gas run to the credit of the royalty interest reserved under and by virtue of any oil and gas mining lease now in force and effect covering said land, and under any oil and gas mining lease hereafter executed covering said land, or any part thereof; . . . .

What is referred to as the production clause follows the royalty clause and it reads:

. . . and in any event the grantee herein, its successors or assigns, shall be deemed the owner of and shall be entitled to receive one sixty-fourth of all oil and gas produced and saved from said land or any part thereof.

The crux of this case, and perhaps the cause of the litigation, is a part of the royalty clause which reads: ". . . the

grantee . . . shall be entitled to receive hereunder one-eighth of all oil and/or gas run to the credit of the royalty interest . . . . ''

If this means that the non-participating interest holder participated in *all* royalty revenue, then the division order was correct and the chancery judge was wrong. If it means participation in only the usual one-eighth royalty interest, then the chancellor was correct and the appellees do not have to share their overriding royalty with the non-participating royalty owner claimants.

It is our duty to interpret such instruments by trying to make all parts of the instrument harmonize, and stand together, if possible, so as to ascertain the intention of the parties. *Wynn v. Sklar & Phillips Oil Co., supra.* The granting clause in these deeds says that a one sixty-fourth interest is granted to the oil, gas and minerals produced. This clearly limits the claim of the non-participating holders because if they were to participate in the overriding royalty, they would receive more than a one sixty-fourth interest. Also, this same one sixty-fourth interest is mentioned in the production clause. No doubt it would have been clearer if the parties had said in their instruments that participation would only be in the normal one-eighth royalty, but they did not. However, when examined as a whole, the instrument clearly limits the non-participating interest to one sixty-fourth of the oil, gas and minerals produced. *Wynn v. Sklar & Phillips Oil Co., supra.* Therefore, we agree with and affirm the chancellor's decision that the appellees do not have to share their overriding royalty interest with the non-participating royalty holders.

The chancellor entered an alternate decree wherein he decided that if we disagreed with his decision regarding an interpretation of the royalty deeds in question, then he would set aside the deeds because of mutual mistake between the appellees and the holders of the working interest. We find that our decision renders that issue moot.

Affirmed.

We agree. HARRIS, C.J., and FOGLEMAN and BYRD, JJ.