Ena WILSON and Bruce Wilson
*v.* William R. BROWN and Jane Brown

94-920                                        897 S.W.2d 546

Supreme Court of Arkansas
Opinion delivered April 3, 1995
[Rehearing denied May 1, 1995.*]

*Holt, C.J., not participating.

*Robinson, Staley & Marshall,* by: *Robert L. Robinson,* Jr., for appellants.

*Pope, Shamburger, Buffalo & Ross*, by: *John K. Shamburger*, for appellees.

ROBERT L. BROWN, Justice. This case involves two adjacent businesses — a skating rink and a catfish restaurant — the customers of which use the same driveway for ingress and egress from Highway 25 in Heber Springs. Appellants Ena and Bruce Wilson own the skating rink.[1] Appellees William R. and Jane Brown own the catfish restaurant. The central dispute involves the joint use of an easement strip and alleged interference in that usage by each party against the other.

In 1982, Greers Ferry Development Company, Inc. owned the property abutting Highway 25 which property is now owned by the Wilsons and the Browns, including the easement which is in dispute in this matter. In that year, Greers Ferry Development sold part of its property to the Wilsons' predecessors, James L. Hawkins and Cherolyn Hawkins, for the purpose of operating a skating rink and stated in the deed: "Grantor reserves unto himself a parking and driveway easement." That easement was described as having dimensions of 30 feet by 220 feet and ran from Highway 25 to the skating rink. On July 31, 1992, the Wilsons purchased this same property from Heber Springs State Bank, which succeeded to the interest of Greers Ferry Development, "subject to any existing easements." The Wilsons now operate the skating rink known as Skateland on the property. Prior to that date and on April 7, 1988, the Browns purchased the other part of the Greers Ferry Development property and have operated a catfish restaurant, Mr. B's, on that property. Since their purchase of the land, they have used the easement for a driveway and for parking. The Wilsons have continued to use the strip for access from the skating rink to Highway 25.

In May 1993, the Wilsons began to experience problems with the Browns' use of the easement strip. On July 2, 1993, the Wilsons wrote a letter to the Browns instructing them to cease dumping waste water and fish debris onto Skateland's property and demanding that they also prevent their customers from parking on the property. On August 26, 1993, the Browns filed a peti-

---

[1] The catfish restaurant also has its own separate entrance apart from the joint driveway.

tion in chancery court, seeking a temporary restraining order and a permanent injunction against the Wilsons from interfering with their easement. The chancellor temporarily restrained the Wilsons from blocking the easement pending the hearing. On September 13, 1993, the Wilsons answered the Browns' petition and counterclaimed against the Browns. The Wilsons alleged that the easement reserved was in gross and personal to Greers Ferry Development and, therefore, terminated when Greers Ferry Development's interest in the restaurant property ceased. Further, they asserted that the actions of the Browns in dumping refuse on the Skateland property and burning trash constituted a continuous trespass and nuisance, and they requested that the chancellor enjoin the Browns and their customers from parking and driving on the easement. As an alternative, the Wilsons sought a declaratory judgment authorizing the Wilsons to erect a fence at the Browns' expense which would set off the easement strip from the restaurant property. Finally, the Wilsons prayed for a dismissal of the Browns' petition on the ground that the Browns should not be allowed to come into equity with unclean hands. On December 10, 1993, the chancellor modified the temporary restraining order and directed the Browns not to dump trash on the easement strip or impede ingress or egress to the skating rink property.

On March 3 and 4, 1994, the matter was tried before the chancellor. Following the trial, the chancellor issued a letter opinion finding that the easement was appurtenant to the Browns' property and not personal to Greers Ferry Development. In his resulting decree, he ordered the Browns to erect a barricade on the easement strip. That barricade, according to the decree, would allow the Wilsons to have the full 30-foot width at the entrance of the easement strip off Highway 25 for the first 10 feet but would then limit the width of the easement to 18 feet rather than 30 feet for the remainder of the strip. On March 31, 1994, the Wilsons moved for an amended decree for the reason that the barricade denied them adequate access to Highway 25. The chancellor denied the motion.

■■ For their first point, the Wilsons urge that the chancellor was wrong in finding that the easement strip was appurtenant to the restaurant property and not personal to Greers Ferry Development. We disagree. This court has explained that ease-

ments appurtenant run with the land and easements in gross are personal to the grantors. *Merriman* v. *Yutterman*, 291 Ark. 207, 723 S.W.2d 823 (1987); *Wallner* v. *Johnson*, 21 Ark. App. 124, 730 S.W.2d 253 (1987). An easement appurtenant serves a parcel of land called the dominant tenement. The property on which the easement is imposed is the servient tenement. *Thompson on Real Property*, § 60.02(f)(3) (David A. Thomas ed. 1994). An easement in gross does not have a dominant tenement because it benefits one person or entity, not the land. *Id.* In addition, when we interpret a deed, the primary consideration must be given to the intent of the grantor. *Bennett* v. *Henderson*, 281 Ark. 222, 663 S.W.2d 180 (1984). The intent of the grantor should be garnered solely from the language of the deed unless the language of the instrument is ambiguous, uncertain, or doubtful. *Id.* If the language of the deed is ambiguous or doubtful, it should be construed against the party who prepared it. *Id.*

The Wilsons rely on *Merriman* v. *Yutterman, supra,* and *Rose Lawn Cemetery Assoc., Inc.* v. *Scott*, 229 Ark. 639, 317 S.W.2d 265 (1958), for their contention that the failure to reserve the easement in heirs, successors, and assigns renders the easement merely one in gross. In *Merriman*, this court addressed the following language in a will: "the forty (40) foot driveway from Free Ferry Road, three hundred (300) feet Northward, shall be kept open for the common use of the devisees in this will." This court held that by stating in his will that the driveway was to be kept open for the *common use* of the devisees in the will, the deceased evidenced his intent that the easement was personal to those parties. Because the easement was in gross, it was not transferable. In *Rose Lawn Cemetery*, the grantor conveyed his interest in property to his three sisters "except a strip of land 25 feet wide . . ., which is reserved as a roadway for use of the parties hereto." The grantor's children subsequently inquired whether they had an interest in the strip of land reserved by the grantor. This court held that the language in the deed created an easement in gross which was personal to the parties which ended at the grantor's death. Accordingly, the grantor's children could claim no interest in the strip of land. We note that in both the *Merriman* and the *Rose Lawn* cases the use of the easement was limited to certain individuals. That factor warranted a conclusion that the easements were in gross. To the same effect are *Ft. Smith*

*Gas Co.* v. *Gean,* 186 Ark. 573, 55 S.W.2d 63 (1932) and *Field* v. *Morris,* 88 Ark. 148, 114 S.W. 306 (1908).

In the case before us, there are several factors that lead us to conclude that the terms of the deed are ambiguous on the issue of whether the easement was intended to be personal to Greers Ferry Development or to run with the restaurant property. The easement language at issue states: "Grantor reserves unto himself a parking and driveway easement." This language, however, does not provide the reason for the reservation of an easement or for whose use the easement was reserved. It stands to reason, though, that a development company would reserve the easement to run with the restaurant property so as to enhance its marketability. Indeed, it is illogical, as the chancellor concluded, to think that a development company was interested in an easement solely for personal use. The Wilsons were under no illusions about this. They took title to the Skateland property in 1992 subject to existing easements and shared the driveway and parking with the Browns before the litigation commenced in 1993.

We believe that the Greers Ferry Development deed to the Hawkinses in 1982 is ambiguous and that the chancellor correctly considered parol evidence from former officers of Greers Ferry Development and others in finding the easement to be appurtenant. We affirm the chancellor on this point.

For their next point, the Wilsons maintain that the chancellor erred in denying them an injunction against the Browns' various acts of trespass. The Wilsons list seven examples of conduct by the Browns which, they contend, constitute a continuing trespass:

1. Parking their vehicles on the easement and allowing their customers and employees to park there in such a way as to block vehicular access to the skating rink from the highway;

2. Refusing to ask their customers to move their parked vehicles which blocked the access.

3. Digging trenches across skating rink property and washing grease, waste water, fish waste, and other garbage with a hose from the catfish restaurant property onto the skating rink property.

4. Burning trash day and night in an open barrel close to the skating rink in violation of a city ordinance.

5. Throwing boxes out the back door of the catfish restaurant onto the skating rink property.

6. Refusing to clean up drinking cups, beer cans, whiskey bottles, and so forth that their customers threw out on the easement.

7. Permitting their employees to smoke marijuana and hurl expletives at the Wilsons and the young patrons of the skating rink.

We address several of these allegations as part of our *de novo* review, since the chancellor did not expressly resolve them. With respect to the allegation that the Browns dug ditches to wash the grease and fish waste from the restaurant onto the skating rink property, that situation appears to have been mitigated. Jane Brown testified that she has installed a drain for her employees to use to dispose of waste water. The allegation of burning trash also appears to be moot. Jane Brown testified that she removed the burn barrel pursuant to instructions from the Heber Springs Fire Chief, Frank Valentine, in October 1993 and that she no longer burns waste on her property.

The chancellor did consider the assertion that the Browns were throwing empty boxes onto skating rink property. Jane Brown testified that she has broken the boxes down and thrown them into the trash dumpster ever since Bruce Wilson first asked her to remove them in the summer of 1993. But in any case, the chancellor in his decree directed that the Browns construct a fence at their expense on their west property line between the restaurant and skating rink to prevent boxes and paper materials from blowing onto the Wilsons' land. That directive resolves this aspect of the Wilsons' counterclaim.

With regard to trash on the easement, verbal abuse, and marijuana smoking, the allegations are more appropriate for a claim of nuisance and fall short of what is required for a finding of continuing trespass. The Wilsons also contend that the Browns have engaged in a continuing trespass by parking their cars and allowing their employees and customers to park in the easement which blocks their access to Highway 25. Because we

have held that the Browns have an easement for parking and a driveway along the easement strip, there is no basis for trespass. Nevertheless, we address the question of the extent to which the Browns and their customers can block the access of the Wilsons and their customers to Highway 25 under the final point.

■■ For their third point, the Wilsons urge that the chancellor erred in allowing the Browns to come into equity with unclean hands. They cite as examples of unclean hands the same conduct used to support their claim of trespass. The equitable maxim of unclean hands is stated as follows:

> The clean hands maxim bars relief to those guilty of improper conduct in the matter as to which they seek relief. *Marshall* v. *Marshall*, 227 Ark. 582, 300 S.W.2d 933 (1957). Equity will not intervene on behalf of a plaintiff whose conduct in connection with the same matter has been unconscientious or unjust. *Batesville Truck Lines, Inc.* v. *Martin*, 219 Ark. 603, 243 S.W.2d 729 (1951).

*Merchants & Planters Bank & Trust Co.* v. *Massey*, 302 Ark. 421, 790 S.W.2d 889 (1990). The chancellor's decree was silent on this issue. We perceive from the tone of the briefs in this appeal that the rancor between the parties in this matter is considerable and that bitterness has attached. Regardless, on *de novo* review we do not consider the evidence of unconscientious or unjust conduct on the part of the Browns to be so clearcut and of such a magnitude as to warrant a decision in this matter based on unclean hands.

■ For their final point, the Wilsons assert that the barricade ordered by the chancellor within the easement strip divested them of land owned in fee simple. We agree that the chancellor was without authority to order the erection of a barricade which effectively took part of their servient tenement without just compensation. This is impermissible. *See* Ark. Const. Art. 12, § 9. We reverse the chancellor on this point and direct that the chancellor amend his decree to remove the requirement of a barricade.

■ Two businesses are involved here and the owners of each have an interest in the easement strip as owners of the dominant and servient tenements. We have recognized that in deter-

mining the relations between the easement owner and the possessor of the servient estate, the governing principle is that neither should unreasonably interfere with the rights of the other. *Jordan* v. *Guinn*, 253 Ark. 315, 485 S.W.2d 715 (1972). We have further recognized that what is reasonable or unreasonable will vary with the facts of the case. *Id.* It is generally recognized that the holder of the dominant estate has a duty to use the property so as not to damage the owner of the servient estate. *Davis* v. *Arkansas Louisiana Gas Co.*, 248 Ark. 881, 454 S.W.2d 331 (1970). Conversely, the owner of a servient estate may not erect a barrier that unreasonably interferes with the right of passage by the easement owner. *Jordan* v. *Guinn, supra.*

We have held that the restaurant property carries with it a parking and driving easement as an easement appurtenant over the strip in dispute. That does not mean, though, that the Browns can block, impede, or otherwise truncate the Wilsons' access to Highway 25. That clearly would constitute an unreasonable interference with the rights of the owners of the servient estate. The 30 feet by 220 feet easement strip will continue to be used by the Browns and their customers for parking and a driveway but not in such a manner as to impede or block the ingress and egress of the Wilsons and their customers from the Skateland building to Highway 25. Nor may the Wilsons or their customers block similar ingress and egress for the restaurant customers along the easement strip.

Affirmed in part. Reversed in part and remanded for an order consistent with this opinion.

HOLT, C.J., not participating.

LEGAL DESCRIPTION'S
FOR: SKATELAND &
MR. B's CATFISH

SCALE I IN. = 60 FT.

THIS DRAWING PREPARED FROM LEGAL DESCRIPTIONS FURNISHED AND
A PREVIOUS SURVEY DONE BY ME IN 1988.

LEGEND

● FOUND IRON PIN

△ COMPUTED POINT

──── BOUNDARY LINE

PREPARED BY:
CLIFTON W. STARK
P.O. BOX 176
HEBER SPRINGS, AR 72543
PHONE 501-362-4062