**Sherman COLBERT, Ursey Jerome Colbert, and Wiley Joe Colbert, Plaintiffs–Respondents,**

v.

**Cletis NICHOLS, Defendant–Appellant.**

No. 20716.

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 31, 1996.

---

Mark J. Pelts, Pelts, McMullan & Edgington, Kennett, for defendant-appellant.

John Hall Dalton and John Hall Dalton, Jr., Dalton, Treasure & Mowrer, Kennett, for plaintiffs-respondents.

PREWITT, Judge.

Plaintiffs have an interest in real property situated to the north of land owned by Defendant. Plaintiffs filed a petition alleging that Defendant "erected or caused to be erected a dam across" a drainage ditch which drained water from land farmed by Plaintiffs and on which they resided. Plaintiffs sought an injunction directing Defendant to remove the dam and directing Defendant to restore the drainage ditch south of the dam to its previous condition. They further sought to prevent Defendant from erecting any other obstructions to the flow of water from the drainage ditch and requested actual and punitive damages. Defendant counterclaimed, seeking damages from Plaintiff Ursey Jerome Colbert, contending that he trespassed upon Defendant's land and destroyed "certain earthen levees which existed on Defendant's land."[1]

Following non-jury trial, the trial court entered a judgment and injunction by which "Defendant is hereby restrained and enjoined from erecting obstructions to the flow

of water in and from the north-south ditch to a lesser volume of flow than that which existed prior to the excavations made by Defendant...." Plaintiffs were denied any damages. The judgment also found for Plaintiffs on Defendant's counter-claim. Defendant appeals, presenting three points relied on.

Defendant admits that Plaintiffs have a prescriptive right to drain water through Defendant's land. However, they question the extent of that right as defined in the injunction. They also question the specificity of the injunction, whether Defendant violated Plaintiffs' prescriptive rights, whether one or more of the Plaintiffs was acting with "clean hands," and they contest the trial court's denial of Defendant's counterclaim.

Review is under Rule 73.01(c). For the interpretation of that rule, see *In re Marriage of Lafferty*, 788 S.W.2d 359, 361 (Mo. App.1990). "Due regard shall be given to the opportunity of the trial court to have judged the credibility of witnesses." Rule 73.01(c)(2). "All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." Rule 73.01(a)(3).

■ Defendant's first point has two prongs. He first contends that the injunction "failed to properly describe and define the prescriptive rights as to the area of land and the volume or flow of water in accordance with the weight of the evidence, and did not comply with Rule 92.02(d)...." Defendant states that the injunction "is vague, inconsistent and certainly not specific."

■ The trial court is vested with broad discretionary power to shape the relief it grants. *Blackburn v. Richardson*, 849 S.W.2d 281, 292 (Mo.App.1993). An injunction must be specific enough so as not to be subject to misunderstanding and confusion by those against whom it is directed. *Id.* Rule 92.02(d) states:

**(d) Form and Scope of Injunction or Temporary Restraining Order.** Every order granting an injunction and every restraining order shall set forth the rea-

---

1. Rosemary Nichols was initially a defendant, but plaintiffs dismissed as to her prior to trial. She was not a party to the counterclaim.

sons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the petition or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

■ Here, there does not appear to be any dispute regarding the location of the ditch or the parts of the ditch Defendant sought to modify. We think this order is sufficiently specific under these circumstances. In fact, we are not sure how it could be more specific, as it would be difficult to describe the volume and flow of the ditch. Less detail and precision is demanded in describing an access across a farm than in fixing limitations between city lots. *Kohlleppel v. Owens*, 613 S.W.2d 168, 175 (Mo.App.1981) (citing *Allen v. Smith*, 375 S.W.2d 874, 883 (Mo.App. 1964)).

Nor do we think that the order is necessarily inconsistent. Defendant suggests that the court's order prohibiting him from obstructing the flow of water so as to reduce it to a lesser volume is inconsistent with the right to alter the flow. There is no indication, however, that altering the flow would necessarily lessen it. The direction of the flow on Defendant's land could be changed as long as it does not cause less water to travel through the drainage ditch.

■ The second part of Defendant's Point I states:

B. The court's injunction in restraining defendant's right to obstruct or excavate to lessen the water flow onto his land, failed to properly apply the law of "reasonable use."

■ This point fails to state wherein and why the court failed to properly apply the law of "reasonable use," as that term was recently defined and explained in *Heins Implement Co. v. Mo. Highway & Transp. Comm'n*, 859 S.W.2d 681, 689 (Mo. banc 1993). A point relied on which does not comply with Rule 84.04(d) by stating "where-

in and why" the trial court's ruling is erroneous fails to preserve that issue for appellate review. *Newcomb v. Humansville R–IV School Dist.*, 908 S.W.2d 821, 832 (Mo.App. 1995). Nevertheless, we have examined the evidence and the injunction and believe that the trial court correctly followed the doctrine of reasonable use. The trial court was justified in finding that Plaintiffs had a prescriptive drainage easement across Defendant's land, that the dam interfered with that easement, and would cause flooding on Plaintiffs' land. Point I is denied.

■ For his second point, Defendant states that the trial court erred in issuing the injunction because "evidence of irreparable harm was speculative and because Plaintiffs were not entitled to equitable relief due to their actions during the pendency of the litigation." Defendant claims that the evidence was insufficient because there was never any flooding on Plaintiffs' land. He also asserts that by Plaintiff Ursey Colbert causing the dam to be bulldozed, he did not "do equity" or come into the litigation with "clean hands." Defendant states that his land was flooded due to Plaintiff Ursey Colbert causing the destruction of the dam.

■ It is well settled that a court of equity will not aid a plaintiff who comes into court with unclean hands. *Mahaffy v. City of Woodson Terrace*, 609 S.W.2d 233, 238 (Mo.App.1980). One who has engaged in inequitable activity regarding the very matter for which he seeks relief will find his action barred by his own misconduct. *Id.*; *Guzzardo v. City Group, Inc.*, 910 S.W.2d 314, 317 (Mo.App.1995); *Warren v. Warren* 784 S.W.2d 247, 254 (Mo.App.1989). A litigant coming into equity must keep his hands clean throughout the litigation, even to the time of ultimate disposition by an appellate court. 30A C.J.S. *Equity*, § 106 (1992).

We do not condone the use of "self-help" where the matter can be resolved through the courts. However, here, there was evidence that at the time the dam was removed, a large amount of rainfall was anticipated, subjecting Plaintiff's land and houses to the threat of flooding if the dam or levee was not removed. There was also evidence that such

harm might result from later rainfall. Considering this evidence, the trial court could properly find the harm not so speculative as to prevent relief.

In *Wilson v. Brown*, 320 Ark. 240, 897 S.W.2d 546, 549 (1995), the Arkansas Supreme Court upheld a lower court decision to grant equitable relief to owners of a catfish restaurant seeking an easement across a neighboring skating rink parking lot, despite the fact that there was substantial evidence that the owners had trespassed by "[d]igging trenches across the skating rink property and washing grease, waste water, fish waste and other garbage ... into skating rink property." Reviewing the matter de novo, the court held that this evidence of "unconscientious or unjust conduct" was not "of such a magnitude as to warrant a decision ... based on unclean hands." *Id.* 897 S.W.2d at 550; *see Blackburn*, 849 S.W.2d at 290–91 (holding that trespass alone does not necessarily require the application of "unclean hands").

Here, under an abuse of discretion standard, we do not believe the trial court erred in granting the injunction or in finding the evidence insufficient to warrant application of either the unclean hands doctrine or the maxim that one seeking equity must do equity. These doctrines are not ones of absolutes and should be applied where they promote right and justice. 30A C.J.S. *Equity*, §§ 96, 111 (1992). Only one of the Plaintiffs was shown to have directly caused the destruction of the dam. *See* 30A C.J.S. *Equity*, § 109 (1992) (noting that an innocent party is not barred from relief because of the misconduct of others for which he is not responsible). There were apparently others besides the Plaintiffs who could have been damaged because of the dam.

Under our limited review, giving due regard to the opportunity of the trial court to adjudge credibility, we are not convinced that an abuse of discretion has been established. Point II is denied.

For his remaining point, Defendant asserts that the trial court erred in ruling in favor of Plaintiffs upon his counterclaim, because it was undisputed that Plaintiff Ursey Colbert directed a bulldozer operator to bulldoze the dam erected by Defendant. As earlier discussed, the trial judge was justified in finding that the dam was constructed in violation of Plaintiffs' rights, and would obstruct the flow of water, causing flooding upon land in which Plaintiffs had an interest. If, in fact, the destruction of the dam caused flooding on Defendant's land, that occurred because of Defendant's improper conduct. Under these circumstances, the trial court did not err in denying damages to Defendant on his counterclaim.

The judgment is affirmed.

BARNEY, P.J., concurs.

GARRISON, J., dissents, filing separate dissenting opinion.

GARRISON, Judge, dissenting.

I respectfully dissent with reference to that portion of the majority opinion which affirms the trial court's denial of relief to Defendant on his counterclaim for trespass. There was no dispute that Ursey Jerome Colbert caused a third party to enter upon Defendant's land and remove the dam. This occurred at a time when the issue of Defendant's right to maintain the dam was pending before the trial court and was unresolved.

Every unauthorized entry is a trespass. *Vecchiotti v. Tegethoff*, 745 S.W.2d 741, 745 (Mo.App.E.D.1987). One who promotes, directs, or aids in a trespass is as much a trespasser as the one who physically intrudes upon the land. *Casanover v. Villanova Realty Co.*, 209 S.W.2d 556, 560 (Mo.App.E.D. 1948). Bad faith is not an element of a trespass. *Sperry v. ITT Commercial Finance Corp.*, 799 S.W.2d 871, 879 (Mo.App. W.D.1990). Likewise, good faith is not a defense. *Id.* A trespass entitles the wronged party to at least nominal damages. *Vecchiotti v. Tegethoff*, 745 S.W.2d at 745.

I believe Defendant was entitled to a judgment on his counterclaim and at least nominal damages.