James W. PARHAM, Sue F. Parham, Obie Cooper, Cleo
Cooper, Howard M. Smith, Linda Payn, Paul Cooper, David
Cooper, Pam Kopcheck, John Kopcheck, Dennis Medford, and
Jo Ann Stevens *v.* WORTHEN BANK and TRUST
COMPANY, INC., and Anne H. Monroe, Trustees of the
Monroe Family Trust I and T. Archie Monroe

96-100                                             933 S.W.2d 384

Supreme Court of Arkansas
Opinion delivered November 25, 1996

*Crumpler, O'Connor & Wynne*, by: *William J. Wynne*, for appellants.

*Woodward & Epley*, by: *Michael G. Epley* and *Bridges, Young, Matthews & Drake, PLC*, by: *Cary E. Young*, for appellees.

ANDREE LAYTON ROAF, Justice. This appeal involves the construction of a 1922 deed by which the appellants, heirs and grantees, obtained a non-participating royalty interest in the mineral rights to property located in Columbia County, Arkansas. The appellees own the property, including the mineral rights. On appeal, the appellants claim that the Columbia Chancery Court erred when it found that they owned a $1/16$ instead of a $1/12$ royalty interest in the oil and gas produced pursuant to a lease executed by the appellees in 1992. We find no error and affirm.

By the execution of a release deed dated August 10, 1922, Claude and Helen Smith conveyed to I.L. and J.P. Cooper a non-participating royalty interest in the mineral rights in some 200 acres of land located in Columbia County, Arkansas. The Smiths subsequently conveyed ownership of this property in 1922 and 1927 to T.A. and Alice E. Monroe. The property is currently held by appellees, the Monroe Family Trust, with Worthen Trust Company, Inc. and Anne H. Monroe as trustees, and T. Archie Monroe ("Monroe family"). Over the years, the Coopers devised or conveyed their non-participating royalty interest to various individuals,

twelve of whom are the appellants ("Cooper heirs").

In 1992, the Monroe family executed oil and gas leases of the property to a third party. The new leases provided that the Monroe family's reserved royalty interest would be $\frac{1}{6}$ of the gross production of the wells on their property.

The Cooper heirs in essence contend that the 1922 deed granted them a $\frac{1}{2}$ interest in whatever royalty interest was retained by the Monroe family. Accordingly, the Cooper heirs asserted that they are entitled to $\frac{1}{2}$ of the $\frac{1}{6}$ royalty interest retained by the Monroe family in the 1992 leases, or $\frac{1}{12}$ of the total royalties from the wells. The Monroe family disputed this claim, and contended that the 1922 deed granted the Cooper heirs only a $\frac{1}{16}$ royalty interest in the wells regardless of the interest retained by the Monroe family, and that the Cooper heirs' $\frac{1}{16}$ interest was thus unaffected by the 1992 leases.

The oil purchaser and well operator refused to pay the portion of the royalties in dispute until the Monroe family and the Cooper heirs resolved their conflict. The Monroe family filed suit in the Columbia County Chancery Court seeking a declaratory judgment. Both the Monroe family and the Cooper heirs filed motions for summary judgment.

After a hearing, Chancellor Hamilton H. Singleton granted summary judgment in favor of the Monroe family and found that the Cooper heirs were only entitled to $\frac{1}{16}$, instead of $\frac{1}{12}$, of the royalties from the oil and gas wells. In a letter opinion, the chancellor explained that the 1922 deed gave the Cooper heirs an absolute, $\frac{1}{16}$ "fractional share" royalty which was unaffected by the interest retained by the Monroe family in subsequent leases. Hence, the 1992 leases had no bearing on the Cooper heirs' royalty interest in the wells. The Cooper heirs appeal from this grant of summary judgment.

This Court has jurisdiction pursuant to Ark. S. Ct. R. 1–2(a)(15) & (17) because this appeal involves a question of oil and gas law, and the construction of a deed.

The sole issue on appeal is whether the 1922 release deed granted the Cooper heirs a "fractional share" royalty, as was decided by the chancellor, or a "fraction of a share" royalty. A "fractional share" royalty means that the royalty owner will receive an absolute,

predetermined fraction of the gross production of the well. Howard R. Williams & Charles J. Meyers, 2 *Oil and Gas Law* § 327 (1986). The royalty owner's fractional interest will not fluctuate according to the amount of royalty interest retained by the grantor in subsequent leases. *Id.* For example, "an undivided $1/16$ royalty interest in any oil, gas or minerals that may hereafter be produced" creates a "fractional share" royalty whereby the royalty owner is entitled to $1/16$ of the gross production of the well, regardless of the interest retained by the grantor in subsequent leases to third parties. *Id.*

In contrast, a "fraction of a share" royalty is dependent upon the interest retained by the grantor in leases to third parties. *Id.* While language creating a "fractional share" royalty refers to a fraction of the gross production, a "fraction of a share" royalty refers to a fraction of the royalty interest retained by the grantor. *Id.* For example, "an undivided one-sixteenth interest of the royalty" creates a "fraction of the royalty" interest whereby the royalty owner is entitled to $1/16$ of whatever interest is retained by the grantor in leases to third parties. *Id.* Hence, if the grantor retains a $1/8$ interest, the royalty owner will be entitled to $1/16$ of the grantor's $1/8$ royalty or $1/128$ interest.

The granting clause of the 1922 release deed in question states:

> That we, Claude L. Smith and Helen E. Smith...grant, bargain, sell, convey, set over and assign and deliver unto the said I.L. and J.P. Cooper the following to-wit: An undivided $1/16$ interest in and to all of the *oil, gas and other minerals in the soil and under the surface thereof that may be produced from the land hereinafter described.*

(Emphasis added.) This language clearly establishes that the royalty owners are entitled to a fraction of the gross production and not of the royalty interest. Hence, the chancellor was correct that the granting clause creates a "fractional share" royalty whereby the Cooper heirs are entitled to a consistent, $1/16$ of the gross production regardless of the interest retained by the Monroe family in subsequent leases. *See* Phillip E. Norvell, *Pitfalls in Developing Lands Burdened by Non-Participating Royalty*, 48 Ark. L. Rev. *934, 937 (1995) (referring to Hanson* v. *Ware*, 224 Ark. 430, 274 S.W.2d 359 (1955)).

If the pertinent language in the deed had ended at this point,

there would be no dispute as to amount of the royalty interest conveyed to the Cooper heirs. However, after describing the property to be conveyed, the deed further provides:

> ...said undivided $1/16$ interest in the oil, gas and other minerals herein conveyed is to cover and apply to that portion only, *which is $1/2$ of $1/8$ of the oil, gas and other minerals, reserved by the grantor herein,* his heirs or assigns, in any lease for the development of oil, gas and other minerals now in existence, or that may hereafter be executed and delivered to any lessee...
>
> ...it being the intention of the parties hereto that this grant in no way shall prevent or interfere with the grant herein or his heirs or assigns in their own name to lease the land herein described for the purpose of developing for oil, gas and other minerals, the grant herein giving the grantee a mineral interest *only to $1/16$ of the oil, gas or other minerals to be delivered out of any royalty* existing by virtue of any lease now on said land, or any that may be placed on said land by any party.

(Emphasis added.) The issue is thus whether either or both of these additional explanatory clauses create a "fraction of a share" royalty, and if so, how these clauses should be construed with the granting clause which clearly creates a "fractional share" royalty.

In *Palmer v. Lide*, 263 Ark. 731, 567 S.W.2d 295 (1978), this court construed the following language as a "fraction of a share" royalty:

> It is hereby intended to convey to the said John C. Orr *one-eighth of one-eighth of whatever royalty* in the oil, gas, and minerals in, under and upon said land which has been retained....
>
> ...the said John C. Orr, however, to receive and be entitled *to one-eighth of one-eighth of whatever oil, gas or mineral royalty* may be reserved....

This court held that Orr was entitled to $1/8$ of $1/8$ of the $1/8$ royalty interest retained by the grantor in the lease of the wells to a third party. *Id.* Thus, Orr was only entitled to a $1/512$ royalty interest. *Id.*

Likewise, this court in *Barret v. Kuhn*, 264 Ark. 347, 572 S.W.2d 135 (1978), interpreted "one-eighth of all oil and–or gas run *to the credit of the royalty* interest reserved" to be a "fraction of a

share" interest. The same conclusion was reached by this court again in 1993 when construing the phrase "an undivided ¹³/₂₄₀...*part of all royalties* on oil gas produced...." *Anadarko Petroleum Co.* v. *Venable*, 312 Ark. 330, 850 S.W.2d 302 (1993) (emphasis supplied).

In this case, the two explanatory clauses from the 1922 release deed refer to "¹/₂ of ¹/₈ of the oil, gas, and other minerals, *reserved by the grantor*" and "¹/₁₆ of the oil, gas or other minerals to be delivered out of *any royalty*." Thus, if we were to agree with the Cooper heirs' argument and construe the explanatory clauses as creating a "fraction of a share" royalty, their resulting royalty share would be ¹/₂ of ¹/₈ of ¹/₆, and ¹/₁₆ of 1/6 respectively, or only a ¹/₉₆ interest.

Moreover, it is clear in the 1922 deed that the grantors anticipated that future leases were susceptible to fluctuation, and that the ¹/₁₆ royalty interest would not be affected by changes "in any lease...now in existence, or that *may hereafter be executed*...the grantor herein giving the grantee a mineral interest only to ¹/₁₆ of the oil, gas and other minerals...out of any royalty existing *by virtue of any lease now...or any that may be placed on said land*...." Thus, it is clear from this language that the grantors intended the Cooper heirs' royalty interest to be a constant ¹/₁₆ despite any changes in leases subsequently executed.

Finally, the Cooper heirs assert that in 1922, ¹/₈ was the traditional interest retained by grantors in oil and gas leases. Thus, they argue that the grantors used the customary ¹/₈ designation when they really meant to state ¹/₂ of whatever interest was retained by the grantors in future leases.

Although the Cooper heirs are correct that ¹/₈ was the customary interest retained by grantors, *Norvell, supra*, an equally logical explanation is that the grantors wished to make it clear that the interest conveyed was ¹/₁₆ of the total production and not merely ¹/₁₆ of the ¹/₈ royalty interest they retained. Moreover, this court has said on numerous occasions that it will give a deed its plain meaning and will not go beyond the four corners of the instrument unless the language of the deed is uncertain, doubtful, or ambiguous. *Wilson* v. *Brown*, 320 Ark. 240, 897 S.W.2d 546 (1995); *Wynn* v. *Sklar & Phillips Oil, Co.*, 254 Ark. 332, 493 S.W.2d 439 (1973). It is obvious that the plain meaning of the deed is that it creates a "fractional share" royalty. Hence, there is no need to go beyond the unambiguous language of the document to consider tradition or

custom in construing the language of the 1922 deed.

Affirmed.

Special Chief Justice Edward Wilson McCorkle and Special Justices Jim Burnett and Margaret Meads join in this opinion.

Jesson, C.J., Dudley, and Brown, J.J., not participating.