SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-14-441

| | |
|---|---|
| JERRY W. BARNETT and ROSE S. BARNETT, Husband and Wife<br>APPELLANTS<br><br>V.<br><br>GARY L. SANDERS and SHARI H. SANDERS, Husband and Wife, and STUART H. SANDERS<br>APPELLEES | **Opinion Delivered** DECEMBER 10, 2014<br><br>APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT<br>[NO. CV 2013-733-2]<br><br>HONORABLE DOUG MARTIN, JUDGE<br><br>AFFIRMED IN PART; REVERSED AND REMANDED IN PART |

**DAVID M. GLOVER, Judge**

Appellants Jerry and Rose Barnett appeal from the order of the Washington County Circuit Court granting appellees Stuart Sanders and his parents, Gary and Shari Sanders (non-resident co-owners), injunctive relief and prohibiting the Barnetts' placement of fencing and gates across the northern easement on the Barnetts' property. On appeal, the Barnetts argue that they did not unreasonably restrict or interfere with the Sanderses' use and enjoyment of their easement across the Barnetts' property; they also assert that the Sanderses' complaint is not ripe for adjudication because Stuart Sanders has never been prevented from using the easement. We reverse and remand in part and affirm in part.

This case involves five contiguous parcels of property. The Sanderses purchased the easternmost parcel in May 2007 from the Darrell Edward McFarland Revocable Living Trust. The Barnetts purchased the three westernmost parcels from the McFarland Family Trust in

SLIP OPINION

April 2012. The parcel between the Sanderses' property, which was possibly going to be developed at some point in the future by Stuart, and the Barnetts' property is owned by another person not a party to this appeal. The Sanderses' deed contains sixty-foot easements described by metes and bounds across the northern and southern sides of the Barnetts' property. Jerry Barnett erected fences and sixteen-foot unlocked gates across the northern easement to facilitate his rotational grazing cattle operation. The Sanderses filed a petition for injunctive relief against the Barnetts for blocking the northern easement.

At trial, Jerry Barnett testified that he has always acknowledged that the Sanderses have an easement, that currently the gates were unlocked, and, that when he needed to lock the gates to secure his cattle, he would provide Stuart Sanders with the combination so that Stuart Sanders continued to have access. There was also testimony at trial that the northern easement was not passable without the performance of significant construction work to traverse a creek and a spillway, as well as remove brush piles and trees; however, Stuart Sanders testified that he could still move equipment along the north easement even though there were ditches. Stuart testified that currently the property was still zoned for agriculture, although he said that he might develop the property at some point in the future. He testified that the stopping and opening of gates would not practically work for him.

The trial court issued a letter opinion granting the Sanderses' petition for injunctive relief based on the holding in *Wilson v. Johnston*, 66 Ark. App. 193, 990 S.W.2d 554 (1999). An order granting the Sanderses' petition for injunctive relief was filed on February 20, 2014. The Barnetts timely filed a notice of appeal on March 14, 2014, as well as an amended notice

SLIP OPINION

of appeal on May 16, 2014.  The Barnetts make two arguments on appeal: (1) Stuart Sanders's use and enjoyment of the easements across the Barnett property was not unreasonably restricted or interfered with by the erection of the gates, and (2) the Sanderses' complaint was not ripe for adjudication because Stuart Sanders has never actually been prevented from using the easement.

Our standard of review following a bench trial is whether the circuit court's findings are clearly erroneous or clearly against the preponderance of the evidence.  *Paschal v. Paschal*, 2011 Ark. App. 515.  A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made.  *Id.*

The trial court's reliance on *Wilson v. Johnston, supra*, in this case is misplaced.  In that case, Wilson purchased property in 1964 containing a private-way easement described by metes and bounds.  Wilson constructed a concrete driveway on a portion of the easement. Roughly a ten-by-thirty-foot portion of the easement was not paved and remained in its natural state.  Wilson utilized the natural part of the easement to gain access to her backyard on occasion, causing ruts in the ground.  Wilson wanted to pave the natural part of the easement; Johnston objected to both Wilson's use of the natural portion of the easement and to Wilson's desire to pave it.  Wilson filed a complaint for declaratory judgment and injunction to determine her rights with regard to the property, as well as requesting that she be allowed to pave the remaining portion of the private way and to extend her privacy fence. The trial court determined that for thirty-one years, the natural portion of the property had

been used as a "buffer" and could not be utilized for anything else; the court also denied

Wilson's requests to pave the property and extend her privacy fence. Wilson argued on

appeal that the chancellor erred in narrowing the width of the private-way easement that was

defined by metes and bounds in the recorded deed, and this court agreed, citing *Howard v.*

*Cramlet*, 56 Ark. App. 171, 939 S.W.2d 858 (1997), for the proposition that an easement that

is not described by metes and bounds or defined with specificity is subject to "lines of

reasonable enjoyment," but holding that when there is an express easement specifically

established by metes and bounds, the trial court can neither diminish the area nor restrict the

usage of the private way.

Here, the circuit court, in its letter opinion, cites *Wilson v. Johnston* for the proposition

that because the easement is described by metes and bounds, the "lines of reasonable

enjoyment" theory does not apply.[1] This is correct. However, notwithstanding that

statement, all easements, regardless of specificity, are still governed by certain general

principles. This court, in *Howard v. Cramlett*, *supra*, held:

> The rule in this state is that the owner of an easement may make use of the
> easement compatible with the authorized use so long as the use is reasonable in light
> of all facts and circumstances of the case. The owner of the servient tenement may
> make any use thereof that is consistent with, or not calculated to interfere with, the
> exercise of the easement granted. 3 Tiffany, *Law of Real Property*, § 811 (3rd ed. 1939);
> *see Natural Gas Pipeline Company of America v. Cox*, 490 F. Supp. 452 (E.D. Ark. 1980).

56 Ark. App. at 174–75, 939 S.W.2d at 860. Thus, when determining the relations between

---

[1]The present case is further distinguishable from *Wilson v. Johnston* because here, there was no diminishment of the metes and bounds easement by the trial court nor was there any restriction on how the easement could be used by Stuart Sanders from the trial court.

the easement owner and the possessor of the servient estate, the governing principle is that neither should unreasonably interfere with the rights of the other; what is reasonable or unreasonable will vary with the facts of the case. *Wilson v. Brown*, 320 Ark. 240, 897 S.W.2d 546 (1995). The holder of the dominant estate has a duty to use the property so as not to damage the owner of the servient estate; conversely, the servient-estate owner may not erect a barrier that unreasonably interferes with the right of passage by the easement owner. *Id.*

The Barnetts argue that there was no unreasonable interference or restriction with Stuart Sanders's use and enjoyment of the easement. However, the circuit court made no findings on these issues, and this court cannot make those findings. Because the trial court made no findings as to what constituted reasonable use/restriction of the easement by Barnett as the servient tenement, we remand the case to the circuit court for findings on the reasonableness/restriction issue.

The Barnetts also raise the ripeness issue, citing *Redwine v. Turner*, 2011 Ark. App. 251, 378 S.W.3d 866, for this court's holding that we would not base our decision in an easement case on what might happen in the future, particularly in the absence of any testimony showing that the servient estate might be combined with another parcel of land at some point in the future. However, in *Redwine*, it was the owner of the servient estate, not the dominant estate as we have here, who was asking for a determination based on what might happen in the future.

In the present case, there was testimony from Stuart Sanders that he was not developing the property at that time—in fact, the land was still zoned agricultural. However,

the Sanderses own the dominant estate, not the servient estate as in *Redwine*, and they are entitled to the use of the easement, even if they are not using it at this moment. In *Wilson v. Johnston, supra*, this court cited *Salmon v. Bradshaw*, 173 N.W.2d 281 (S.D. 1969), for the proposition that an express-grant easement is not lost by nonuse or partial use, and that the easement right exists, notwithstanding the exercise of a lesser privilege. As the dominant tenement, the Sanderses were not remiss to ask the circuit court to determine their rights in the easement if they believed that Jerry Barnett was attempting to usurp the easement, regardless of whether he was using it at the moment or not. Therefore, the issue was ripe for decision, and we affirm the trial court on this point.

Affirmed in part; reversed and remanded in part.

PITTMAN and WHITEAKER, JJ., agree.

*Reece Moore Pendergraft LLP*, by: *Larry McCredy*, for appellant.

No response.